**Samuel W. BARR, Plaintiff,**

v.

**UNITED STATES of America and Arthur W. Moss, Defendants.**

**Civ. A. No. 19595.**

United States District Court
E. D. Michigan, S. D.

Jan. 11, 1963.

---

Marvin I. Wolf, Detroit, Mich., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Richard M. Roberts, Homer R. Miller, Robert A. Mills, and John F. Beggan, Attys., Dept. of Justice, for defendant United States.

THORNTON, District Judge.

This is a tax refund case in which plaintiff seeks recovery of $2169.53 plus interest. This sum represents moneys paid on account of taxes owed under the Federal Insurance Contributions Act, for Federal Employment Tax and for Federal Withholding Tax. The case has been submitted upon Stipulation of Facts, oral argument and briefs. We will give the factual background by setting forth here the pertinent paragraphs from the Stipulation of Facts:

"1. The Orient Recreation Company (hereinafter referred to as Orient), was a Michigan corpora- tion organized on or about February 7, 1948, for the purposes of operat- ing a recreation center in Detroit, Wayne County, Michigan. Samuel W. Barr had no connection with Orient at the time of its organiza- tion.

"2. On or about August 10, 1949, Orient contracted with Mrs. Emma J. Weber (hereinafter referred to as Mrs. Weber), who then operated a bar known as Weber's Cafe, to pur- chase all assets of said bar from Mrs. Weber.

"3. One of the assets of said bar of Mrs. Weber was a Class 'C' liquor license issued to Mrs. Weber by the State of Michigan.

"4. The terms of the contract by and between Orient and Mrs. Weber provided that Orient would pay to Mrs. Weber $15,146.78, of which $7,- 146.78 was to be in cash, and the re- mainder in preferred stock of Orient, having a par value of $8,- 000.00.

"5. On or about November 4, 1949, Orient borrowed $12,600 from the plaintiff, Samuel W. Barr (here- inafter referred to as Barr).

"6. As security for the loan of $12,600 Barr took from Orient: (1) a chattel mortgage which by its terms purported to cover all the as- sets of Orient, which was executed on November 4, 1949 and recorded with the Wayne County Register of Deeds, Wayne County, Michigan on November 7, 1949; and (2) a pledge of 3,000 shares of Orient common stock.

"7. On or about April 19, 1950, Barr purchased the 3,000 shares of Orient common stock at a 'pledged sale.' The 3,000 shares purchased comprised all of the outstanding common stock of Orient.

"8. On or about May 2, 1950, Orient borrowed $10,000 from Barr and defendant Arthur W. Moss (hereinafter referred to as Moss).

"9. As security for said loan of $10,000 Barr and Moss took from Orient a second chattel mortgage which by its terms purported to cover all the assets of Orient, and the second chattel mortgage was executed on May 2, 1950 and recorded with the Wayne County Register of Deeds, Wayne County, Michigan on July 18, 1950.

"10. On or about May 2, 1950, Barr assigned an undivided one-half interest in the first chattel mortgage, referred to in paragraph 6 of this stipulation, to Moss.

"11. On or about March 30, 1951, Mrs. Weber commenced an action against Orient by filing a bill of complaint in the Chancery Division of the Circuit Court for the County of Wayne, Michigan (which bill was assigned Chancery Case No. 473–174), alleging the contract referred to in paragraph 2 of this stipulation had been induced by fraud.

"12. On or about April 16, 1951, Barr and Moss intervened in said action to protect their interest in Orient's assets, Orient at that time being in default on both loans referred to in paragraphs 5 and 8 of this stipulation.

"13. The Circuit Court of Wayne County in Chancery Case No. 473–174, on April 23, 1951, entered a decree (hereinafter referred to as the decree), and which is incorporated by reference into the stipulation, rescinding the contract referred to in paragraph 2 of this stipulation, and directed that Orient return to Mrs. Weber all the assets purchased from her, including the Class 'C' liquor license.

"14. In the decree, the Court further directed Mrs. Weber to deposit in escrow with David Colman the sum of $7,146.78 and the preferred stock of Orient having a par value of $8,000.00, referred to in paragraph 4 of this stipulation. The

escrow agent was directed by the court to deliver the preferred stock to Orient and the $7,146.78 to Barr and Moss whenever and at such time that the Michigan Liquor Control Commission notified Mrs. Weber, or Orient, or the escrow agent, that the Class 'C' liquor license referred to in paragraph 3 of this stipulation, had been accepted for transfer to Mrs. Weber.

"15. In the decree, the Court further directed that Barr and Moss release all encumbered assets of Orient from their mortgages, and that said mortgages be satisfied to the extent of the $7,146.78 on deposit with the escrow agent.

"16. Various federal taxes owed by Orient for periods from January of 1949 through April of 1951 were assessed by the Commissioner of Internal Revenue against Orient. The total amount of $2,748.93 remained unpaid, as of August 10, 1951.

\*     \*     \*     \*     \*     \*

"18. First and second notices of demand were duly made upon Orient for all outstanding assessments, but payment of $2,748.93 of said assessments was never made by any official of Orient.

"19. The escrow account provided for by the decree was never established, and the duties of escrow agent were assumed by Manuel Zechman, hereinafter referred to as Zechman, who was the attorney for Mrs. Weber.

"20. On or about April 12, 1951, the Deputy Collector of Internal Revenue at Detroit, Michigan wrote the Michigan Liquor Control Commission, informed them of Orient's tax delinquency, and requested that the Commission place a 'stop' order on the sale, transfer, or renewal of the Class 'C' liquor license.

"21. On or about April 13, 1951, John J. Kozaren, Commissioner of

said Commission, advised the Bureau of Internal Revenue that the requested 'stop' order had been placed against the transfer of said Class 'C' liquor license.

"22. On or about August 10, 1951 in order to release the Class 'C' liquor license, a cashier's check in the amount of $2,748.93, payable to Zechman, and endorsed in blank by said Zechman was tendered to the Bureau of Internal Revenue for full payment of the tax liability of Orient, which liability included the assessments referred to in paragraph 16 of this stipulation.

"23. At the time Zechman tendered said cashier's check, he stated he was making the payment under protest.

"24. The payment of the $2,748.-93, under protest, by Zechman, to the Bureau of Internal Revenue was done at the direction and with the approval of Barr, in order that the Class 'C' liquor license could be transferred to Mrs. Weber and enabling the parties to comply with the decree of the court. Payment was effective on or about January 22, 1952.

"25. On or about July 10, 1952 there was filed with the District Director of Internal Revenue at Detroit, Michigan, for Barr and Moss, jointly, a Treasury Department Form 843, in which payment of the $2,169.53 paid by Zechman for the tax liability of Orient, was demanded.

"26. On or about November 27, 1957, the District Director of Internal Revenue at Detroit, Michigan, sent a registered letter to Barr and Moss, advising that their joint demand was disallowed."

There are several facts which appear to us to be of paramount importance in reaching a determination here. One is that the plaintiff in this suit intervened in the State Court Chancery action. He therefore was in a position to present in that action whatever equities he believed were in his favor and to obtain an adjudication. Another point is that that Court, in determining that case, ordered the liquor license to be delivered to Mrs. Weber free of *all liens and encumbrances.* The payment of taxes was necessary in order to comply with the order of the State Court. The instant suit is in effect a collateral attack on the State Court decree. This Court is asked to interfere with the provisions of that decree. As an intervener in that case plaintiff was in a position to protect whatever interest he had in any of the property (bar assets, class "C" license, etc.) to be affected by the decree of the State Court. His failure to do this, or his nonsatisfaction with the result there, does not entitle him to employ this forum as a means of rectifying what he considers to be an unfavorable outcome to him flowing from the terms of the State Court decree. This Court cannot afford plaintiff the relief he seeks without there being ultimate interference with the clear wording and obvious import of the State Court decree— Mrs. Weber was not to be burdened with any liens or encumbrances upon the property which was sold by her to Orient and then ordered delivered back to her. The basis for the order of redelivery was the rescission of the contract of sale by the State Court. Plaintiff may not recover.

A judgment may be presented accordingly.