Samuel W. BARR, Plaintiff-Appellant,

v.

UNITED STATES of America and Arthur W. Moss, Defendants-Appellees.

No. 15501.

United States Court of Appeals
Sixth Circuit.

Oct. 28, 1964.

David M. Fried, Detroit, Mich., Samuel W. Barr, Detroit, Mich., in pro. per., on brief, for appellant.

Jonathan S. Cohen, Department of Justice, Washington, D.C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Earl J. Silbert, Attys., Department of Justice, Washington, D.C., on brief; Lawrence Gubow, U. S. Atty., Robert F. Ritzenhein, Asst. U. S. Atty., Detroit, Mich., of counsel, for appellees.

Before PHILLIPS and EDWARDS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

EDWARDS, Circuit Judge.

Plaintiff-appellant in this tax refund case seeks to recover $2,169.53, plus interest, which had been paid in satisfaction of certain taxes owed by a corporation known as Orient Recreation Company. The taxes were owed under federal statutes providing for employee withholding taxes. The suit is brought under Title 28 U.S.C. § 1346(a) (1) authorizing suits by taxpayers for taxes erroneously or illegally paid. The taxes were paid under protest as a result of a decree entered in an equity action in the Circuit Court of Wayne County, Michigan, in which plaintiff was an intervenor.

The United States District Judge who heard this tax refund suit on stipulated facts held that "The instant suit is in effect a collateral attack on the State Court decree"; and dismissed this plaintiff's complaint with prejudice. Barr v. United States, 215 F.Supp. 386, 389 (E.D. Mich.1963).

This case has its origin in a contract between a corporation (Orient Recreation Company) which is not a party to the present litigation, and an individual (Mrs. Weber) who is also not a party to the present litigation. Mrs. Weber, a licensee of the State of Michigan for purposes of dispensing liquor by the glass, sold her liquor business, together with the chattels for operating a bar, and the liquor license (subject to approval of the transfer by the Liquor Control Commission) to Orient. The terms of the contract by and between Orient and Mrs. Weber provided that Orient would pay to Mrs. Weber $15,146.78, of which $7,146.78 was to be in cash and the remainder in preferred stock of Orient, having a face value of $8,000. This contract was entered into about August of 1949. On March 30, 1951, Mrs. Weber filed a bill of complaint in chancery in the Circuit Court for the County of Wayne alleging that the contract which we have described was induced by fraud and seeking its rescission.

In between those two dates it appears a fair inference that Orient had operated a bar under the license and with the chattels which had been conveyed to it as a result of the contract referred to above. As a result of this operation, the Department of Internal Revenue claimed the sum of $2,748.93 to be due for taxes which Orient withheld from its employees' wages for federal income, social security and unemployment taxes.

In between these two dates also, plaintiff-appellant in the instant proceeding, Samuel W. Barr, had loaned $12,600 to Orient, taking a chattel mortgage on all the assets of Orient (which chattel mortgage was recorded in the Wayne County Register of Deeds office November 7, 1949) and a pledge of 3,000 shares of the Orient common stock.

This stock plaintiff-appellant subsequently purchased at a "pledged sale" on April 19, 1950, thereby becoming owner of all of the outstanding common stock of Orient.

Thereafter, on May 2, 1950, Orient borrowed $10,000 from Barr and Arthur W. Moss.[1] As security for this loan Barr and Moss took from Orient a second chattel mortgage which by its terms purported to cover all of the same assets of Orient, and this was duly recorded with the Wayne County Register of Deeds on July 18, 1950. It is clear that these two chattel mortgages were executed and re-

---

[1]. Moss did not join appellant Barr in this suit, but was named by him as a defendant under Rule 19(a) of the Federal Rules of Civil Procedure.

corded prior to the dates of recordation of any tax liens by the government.

On April 12, 1951, however, the Deputy Collector of Internal Revenue filed tax liens relating to the taxes referred to above with the Wayne County Register of Deeds and wrote the Michigan Liquor Control Commission informing them of Orient's tax delinquency and requesting that the Commission place a "stop" order on the sale, transfer, or renewal of the Class C liquor license. This letter was acknowledged by the Chairman of the Liquor Control Commission the next day. This was prior to the intervention of plaintiff-appellant Barr in the Circuit Court chancery action on April 16, 1951, and before the entry of the decree therein which is dated April 23, 1951.

In the decree State Circuit Judge Chester P. O'Hara found that the basic transaction between Orient and Mrs. Weber had been induced by fraud on the part of Orient and ordered said sale rescinded.

Noting that Barr and Moss had not been connected with Orient at the time of the original contract, he also found that they were holders in good faith of the two chattel mortgages. Proceeding to deal with the equities of all parties before him, the Circuit Judge decreed that the sale of the Class C liquor license and certain personal property from Weber to Orient should be rescinded and that the Class C liquor license and the personal property should be transferred by Orient back to Weber "free and clear of any and all valid liens and encumbrances of every kind and nature whatsoever."

It seems clear to us that the Circuit Judge had in mind that this was the state in which the license and personal property had been transferred to Orient, and since he found the transaction fraudulent, he sought a retransfer of the identical items which were the subject of the contract of sale in the same unencumbered position in which they had been transferred in the first place.

He also provided in his decree that the amount of money paid by Orient to Mrs. Weber should be paid by her back into court and provided that it should be held in escrow and paid by the escrow agent to intervenors Barr and Moss "whenever and at such time as the Michigan Liquor Control Commission shall notify the plaintiff or the defendants herein, or the escrow agent, that the said Class C liquor license has been accepted for transfer to plaintiff, Emma J. Weber." He further provided that at that point the escrow agent should return the 800 shares of preferred stock in Orient to Orient and that Barr and Moss should release the Class C liquor license and the personal property from their chattel mortgages.

It was clearly the intent of the Circuit Court decree that these funds should be used to satisfy the chattel mortgages held by Barr and Moss to the degree possible, but only after Mrs. Weber's property had been returned to her free and clear of any encumbrances.

This was finally accomplished by payment of the $2,748.93 of Internal Revenue liens by the attorney for Mrs. Weber, acting as escrow agent.

The payment was made on August 10, 1951, with appellant Barr's knowledge and approval, but under protest. This action was brought by the appellant to seek to recover $2,169.53, plus interest thereon, from the United States of America. But it should be noted that appellant's original complaint in this action is dated November 25, 1959—over eight years after payment of the taxes with which we are concerned.[2]

 District Judge Thomas P. Thornton's opinion in this case dismissed plaintiff-appellant's complaint with these words:

"This Court cannot afford plaintiff the relief he seeks without there being ultimate interference with the clear wording and obvious import of the State Court decree—Mrs. Weber was not to be burdened with any liens

---

2. Barr and Moss filed a claim for refund of the taxes referred to on July 10, 1952, which was disallowed by the District Director on November 27, 1957.

or encumbrances upon the property which was sold by her to Orient and then ordered delivered back to her. The basis for the order of redelivery was the rescission of the contract of sale by the State Court. Plaintiff may not recover." Barr v. United States, supra at 389.

We agree with the District Judge that by intervening in the Circuit Court action Barr and Moss had submitted their rights to adjudication in that court and that the instant action represents a collateral attack upon its decree.

We believe this appeal turns upon interpretation of the State Court decree. As appellant sees the matter, he was free under it to accept its benefits and seek to avoid its penalty. The State Circuit Judge could have drafted the decree so as to preserve appellant's right to contest with the United States as to priority concerning the tax liens. But as we see it, no language from the decree is amenable to establishing this reservation. Appellant does not point out any effort on his part to secure such a reservation and he took no appeal from the State Court decree.

The basic point of the State Court decree was to void the transaction by which Orient acquired the property in the first place and to return it (in its original free and clear state) to its defrauded owner. It was the fraud claim of Mrs. Weber (definitely antecedent in time to appellant's loans and mortgages) which wiped out appellant's security.

We believe the United States District Judge was right in referring to "the obvious import" of the decree. "The obvious import" of the decree was to make satisfaction of the federal tax liens a condition precedent to payment of the escrow balance to Barr and Moss.

The State Court accomplished the objective of restoring the defrauded party to her original position by providing that the escrow be used to pay "any and all valid liens and encumbrances," and by providing that the sum in escrow should be paid to the intervenors when the Mich-

igan Liquor Control Commission gave notice that the liquor license had been accepted for transfer to Mrs. Weber.

■ The Internal Revenue lien on the liquor license served on the Michigan Liquor Control Commission is an authorized method of levy on a liquor licensee. Division of Labor Law Enforcement v. United States, 301 F.2d 82 (C.A.9, 1962).

■ As we view the State Court decree, it mandated payment of all liens, and appellant did not have the right to attempt unilateral amendment of its terms by paying the federal liens "under protest."

Appellant intervened in the State Court action with the purpose of accomplishing foreclosure of his mortgages. He could have named the United States a party to the equity action under 28 U.S.C. § 2410 (a) and secured an adjudication of the competing claims. But it should be remembered in all of this that he was not only a mortgage holder as to the physical assets of Orient Recreation Company, but also Orient's sole stockholder. We believe that it is perfectly reasonable to assume that as the latter appellant had notice of the United States taxes and liens and was aware of the possibility of the United States' claims being asserted against him individually. Int.Rev.Code 1939, § 2707 (a) and (c).

The effect of the payment of the tax, plus appellant's long delay in bringing this suit, was to change the position of the United States in relation to its tax liens to its detriment.

Title 28 U.S.C. § 1346(a) (1), under which this complaint is filed, grants a taxpayer rights of relief which are essentially equitable in nature; hence, equitable defenses are likewise available. Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L. Ed. 1265 (1937); R. H. Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647 (1934).

■ Under the factual situation outlined above, plaintiff-appellant was estopped from collateral attack upon the State Court decree for the critical terms of which he was in large measure respon--

:sible. American Dirigold Corp. v. Dirigold Metals Corp., 125 F.2d 446 (C.A. 6, 1942); 31 C.J.S. Estoppel § 5, at p. :292.

Affirmed.