In re AMERICAN WAY FOOD SERVICE CORP., a Michigan corporation, Debtor.

Lloyd H. KEMPF, Trustee of American Way Food Service Corp., Plaintiff,

v.

INTERNAL REVENUE SERVICE of United States, Robert B. Bierman, Lansing City Treasurer, Michigan Department of Treasury, and Michigan Employment Security Commission, Defendants.

Bankruptcy No. NL 80–02650.
Adv. No. 83–1159.

United States Bankruptcy Court,
W.D. Michigan.

March 7, 1985.

■■■■■■■■■■

Glassen, Rhead, McLean & Campbell, R.F. Rhead, Lansing, Mich., for plaintiff.

John A. Smietanka, U.S. Atty., Daniel M. LaVille, Asst. U.S. Atty., Grand Rapids, Mich., and Ronald F. Fischer, Trial Atty. Tax Division, Dept. of Justice, Washington, D.C., for defendant United States (Internal Revenue Service of United States).

Morgan & Fuzuk, P.C., Ronald G. Morgan, Lansing, Mich., for defendant Robert B. Bierman.

Stephen R. Sawyer, City Atty., Alvan P. Knot, Asst. City Atty., Lansing, Mich., for defendant City of Lansing.

Frank J. Kelley, Atty. Gen., Richard R. Roescher, Curtis G. Beck, Asst. Attys. Gen., Lansing, Mich., for defendant Michigan Department of Treasury.

## OPINION

DAVID E. NIMS, Jr., Bankruptcy Judge.

### TAX LIENS—LIQUOR LICENSE—DISTRIBUTIONS

Lloyd H. Kempf (Trustee), the duly appointed and qualified trustee in this case filed his complaint against the various defendants for a determination that they had no rights to the Class "C" liquor license of the debtor. The license was sold for $22,000.00 with any rights in the defendants to follow the proceeds. Judgment was entered against the Michigan Employment Security Commission as it filed no answer and indicated by letter that it had no interest in the proceedings. A settlement was reached with the Lansing City Treasurer in order to obtain its required approval of the transfer of the license and its claim has been satisfied.

Defendants United States and Robert B. Bierman have filed motions for summary judgment.

As this proceeding involves the determination of the validity, extent and priority of liens, it is a core proceedings under the Model Emergency Rule adopted by the U.S. District Court for this District and 28 U.S.C. § 157.

I would find that there is no genuine issue of any material fact in this adversary proceeding and therefore this is an appropriate proceeding for disposition by summary judgment. Fed.R.Civ.P. 56, Bankr. R 7056. *In Re Morweld Steel Products Corp.*, 8 B.R. 946 (Bankr.W.D.Mich.1981).

### FACTS

Robert B. Bierman (Bierman) sold his tavern business to American Way Food Service Corporation (American), a Michigan corporation, June 23, 1977, including the Class "C" liquor license. The agreement for sale granted a security interest in all the equipment and furniture and contained an agreement to reassign the license in the event of a default. A Michigan Liquor Control Commission (Commission) form which is undated and unsigned informed American that its application had been approved by the Commission but that the license could not be issued until certain items were furnished. One of these items was a copy of the security agreement. This paragraph included this underlined statement:

> "The license is the property of the State of Michigan and cannot be listed in the documents."

Financing statements were filed with the Secretary of State and Register of Deeds, in June 1977, but these did not include the license. American still owes Bierman $9,844.00, which includes interest through December 1983.

Commencing in September 1978 and continuing through June 1980, the United States (U.S.) filed Notices of Federal Tax Liens total $114,850.96.

American filed a voluntary petition under Chapter 11 on August 28, 1980. On April 2, 1981, order was entered transferring the case to a case under Chapter 7.

It is the claim of the U.S. that the license is "property" on which its liens attached and since Bierman failed to perfect his security interest in the license, its liens take priority over any rights of Bierman or Trustee. Bierman claims that because the Commission prohibited the taking of a security interest in the license, he was not required to file a financing statement in order to perfect his interest, this being the method prescribed by the U.C.C. for perfecting a security interest in intangibles. It is Bierman's position that his interest in the license was perfected prior to the filing of the Notice of Tax Liens by virtue of the reassignment agreement between himself and American and that his lien is therefore superior to the interest of the U.S. or Trustee.

TAX LIEN

26 U.S.C. § 6321 provides:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, additional to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

This tax lien arises at the time of assessment and continues until the liability is satisfied or becomes unenforceable by reason of lapse of time. 26 U.S.C. § 6322. The lien is not valid as against any holder of a security interest or judgment creditor until notice has been filed in one office within the state as designated by the laws of such state in which the property is situated. 26 U.S.C. § 6323. There is no claim that the U.S. did not perfect its lien.

■ However, it is questioned whether a Michigan liquor license is "property" or "rights to property" under § 6321. The general question of what is property under § 6321 or its predecessors has been before the courts many times. *Glass City Bank v. U.S.*, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945) held that the U.S. could attach a claim for past services as a state court receiver even though the claim was not in existence when the tax lien arose. The United States Supreme Court has held that § 6321's predecessor created no property rights "but merely attaches consequences, federally defined, to rights created under State law." Thus, "State law controls in determining the nature of the legal interest which the taxpayer had in the property." *Aquilino v. U.S.*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). See also *U.S. v. Bank of Celina*, 721 F.2d 163 (6th Cir. 1983); *Cole v. Cardoza*, 441 F.2d 1337 (6th Cir.1971); *U.S. v. Birns*, 395 F.2d 943 (6th Cir.1968).

■ Several courts have considered the liquor license in relation to § 6321. *Golden v. State*, 133 Cal.App.2d 640, 285 P.2d 49 (1955) held a liquor license to be property relying on *In re Quaker Room*, 90 F.Supp. 758 (S.D.Cal.1950) which held that a California liquor license was property under the Bankruptcy Act of 1898. *The Boss Co. v. Bd. of Com'rs of Atlantic City*, 40 N.J. 379, 192 A.2d 584 (Supr.Ct.N.J. 1963) held that once a license is issued, it becomes property for the purposes of § 6321. *In re Branding Iron, Inc.*, 7 B.R. 729 (Bankr.E.D.Pa.1980) pointed out that several Pennsylvania cases hold that a liquor license is property with value. In *U.S. v. Blackett*, 220 F.2d 21 (9th Cir.1955) the court, in reversing a district judge that had held that a California liquor license was not property, held that since the license had been sold by a judgment creditor, the tax lien was against the money, which was property.

In a comment, "Property Subject To The Federal Tax Lien" 77 Harv.L.Rev. 1485 (1964) the author at p. 1487 notes:

"State labels should not control where the realities—the beneficial incidents of ownership—belie them. For example, many states proclaim by statute that liquor licenses shall not be deemed property, yet allow the holder to assign his licensee for value subject to formal approval by the licensing authority and

compliance by the license with administrative regulations. In such cases the courts have generally looked behind the words of the statute to give the Government a lien on this marketable asset which otherwise might slip through its hands. If state law were held to control the classification as well as the existence of interests, the courts would be unable either to extend the scope of the lien beyond such undesirable state limitations or to classify certain state-created interests as not property subject to the lien."

The author points out in a footnote that even though N.J.Rev.Stat. § 33:1–26 (Supp. 1959) stated that a liquor license was not property, *Boss Co. v. Board of Com'rs, Supra,* held that it was property for the purposes of § 6321.

This Court is bound by the decisions of the Michigan Supreme Court on matters of state law, it being the highest court of this state. In *Bundo v. City of Walled Lake,* 395 Mich. 679, 238 N.W.2d 154 (1976) one of the issues on appeal was "whether an individual seeking a renewal of a class C resort liquor license under § 17 of the Michigan Liquor Control Act has an 'interest' in 'property' such that he is entitled to due process protection. The Court stated at p. 704, "We hold that a licensee has a 'property' interest in the renewal of his liquor license such that before he may be deprived of this interest he must be afforded rudimentary due process."

In *Barr v. U.S.,* 337 F.2d 693 (6th Cir. 1964) one of the necessary issues was whether a federal tax lien could rest in a Michigan liquor license. On this issue, the court stated at p. 696:

"The Internal Revenue lien on the liquor license served on the Michigan Liquor Control Commission is an authorized method of levy on a liquor licensee. *Division of Labor Law Enforcement v. United States,* 301 F.2d 82 (C.A.9, 1962)."

This court cannot help but observe that in spite of the continued claim by the Commission that there is no property right in a liquor license, trustees appointed by the court have consistently sold these licenses, often for a considerable sum, for the benefit of creditors. It is also to be noted that in this case, the license was sold for $22,-000.00, which has been received and is being held by Trustee.

In view of the holding of the Michigan Supreme Court, the Court of Appeals for our Circuit and the almost unanimous decisions of other courts, I conclude that the United States has a valid lien against the liquor license of the debtor.

## SECURITY INTEREST OF BIERMAN

■ As stated in *Aquilino v. U.S.,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), cited above, although state law controls in determining the nature of the legal interest which a taxpayer had in certain property:

"Once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's 'property' or 'rights of property.' "

However, as stated in *U.S. v. Security Trust & Savings Bank,* 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950):

"The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question. Hence, although a state court's classification of the lien as specific and perfected is entitled to weight, it is subject to reexamination by this Court."

In *U.S. v. Scovil,* 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271 (1955) the court held that a tax lien took priority over a landlord's distress for rent and a lien of distraint. The court stated, "Moreover, the distress lien was not perfected in the federal sense at the time the government's liens were filed. Such perfection is, of course, a matter of federal law." Again in *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958) the court, in holding that a tax lien had attached to the cash surrender

value of the deceased taxpayer's life insurance policy even though such property was not subject to creditor's liens under state law, stated that "once it has been determined that state law creates sufficient interests in the insured to satisfy the requirements of § 3670,[1] state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States."

See also *U.S. v. The Liverpool & London & Globe Insurance Co., Ltd.*, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955) and *U.S. v. Acri*, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955).

In *U.S. v. Trigg*, 465 F.2d 1264 (8th Cir. 1972) Cert. den., 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973), a bank failed to perfect an assignment of a construction contract. In holding that the tax lien was superior to that of the bank's lien, the court stated:

> "Under the basic federal priority standard, 'first in time is first in right', a federal tax lien takes priority over a state-created lien unless the state lien is specific and perfected in the federal sense before the federal tax lien arises."

The tax liens were perfected when filed with the Secretary of State and Register of deeds in 1979 and 1980.

If the lien of Bierman had been perfected in 1977, when created, it would have had priority over that of the U.S. In *Paramount Finance Co. v. U.S.*, 379 F.2d 543 (6th Cir.1967) the taxpayer gave a security interest by a security agreement to a lender who furnished money to buy a tavern. This lien was perfected. Two years later a tax lien was filed by the Internal Revenue Service which later seized the liquor permit. The court held that the tax lien was invalid as to a perfected purchase money security interest.

In *Bogus v. American National Bank*, 401 F.2d 458 (10th Cir.1968), even though the Wyoming statute provided that "no license shall be transferred or sold * * * nor shall it be subject to attachment, garnishment or execution," the court relied on the Wyoming Uniform Commercial Code which allowed for a security interest in intangibles, and held that a security agreement in a liquor license could be granted and, if perfected, the secured party's lien would be superior to the interest of a trustee in bankruptcy.

In a recent decision, *In re Ratcliff Enterprises, Inc.*, 44 B.R. 778 (Bankr.E.D. Mich.1984) Judge Graves mentions on p. 779 that since 1981, seven decisions had been rendered by the United States Bankruptcy Courts in the State of Michigan on security interests in liquor licenses. His decision was the eighth and this makes the ninth. In *In re Matto's Inc.*, 9 B.R. 89 (Bankr.E.D.Mich.1981) Judge Brody found that a vendor of a liquor business retained a security interest in the assets including the liquor license. As there was no perfection of the security interest, Judge Brody held that under Section 9–301 of the Uniform Commercial Code the rights of the creditor were subordinate to those of the trustee. Judge Brody's decision was cited and followed in *In re Mason*, 18 B.R. 817 (Bankr.W.D.Tenn.1982) and *In re Gencarelli*, 14 B.R. 751 (Bankr.D.R.I.1981).

In *In re Rudy' Inc.*, 23 B.R. 1 (Bankr.E. D.Mich.1981) Judge Walker held that although a security interest by a bank in the liquor license and liquor inventory was perfected, it was not valid as to a state tax lien as Rule 19 of the Commission provided:

> " '(a) security agreement between a buyer and a seller of a license retail business, or between a debtor and a secured party, shall not include the license or alcoholic liquor.' "

Judge Graves in *In re Ratcliff, supra*, took a different view and held that Rule 19 was contrary to the U.C.C. Art. IX and that notwithstanding Rule 19, an unperfected security interest in a liquor license would be subordinate to a perfected security interest.

In *In re Beefeaters, Inc.*, 27 B.R. 848 (Bankr.W.D.Mich.1983) Judge Howard of this court held that since Rule 19 did not allow a security agreement in a liquor license, there was no requirement for filing,

---

1. Section 6321's predecessor.

with the Secretary of State's office, the agreement to reconvey the license as contained in the sales agreement.

In *In Re Bernies, Inc.*, 44 B.R. 296 (Bankr.E.D.Mich.1983) Judge Bernstein and District Judge Newblatt followed *In re Beefeaters, Inc., supra. In re Beefeaters, Inc.*, was decided under Rule 19 and would therefore not be determinative in this case where the creation of the lien took place prior to Rule 19's enactment.

In the case of *In re McCormick*, 26 B.R. 869 (Bankr.E.D.Mich.1983), the security interest was created and perfected before the effective date of Rule 19 and was subject to Emergency Rule 23(6) which only prohibited a security agreement in alcoholic liquor. Judge Woods held that a perfected security interest in a liquor license was therefore valid.

■ The XXI Amendment to the Constitution of the United States repealed the XVIII Amendment and provided in part:

"Sec. 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

*Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128 (1939) holds that under the Twenty-first Amendment a state may adopt measures to reasonably restrict the transportation, sale or possession of intoxicating liquors. Art. IV § 39 of the Michigan Constitution of 1963 provides in part that "the legislature may by law establish a liquor control commission which, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this state, including the retail sales thereof." Mich.Comp.Laws § 436.7 (Mich.Stat.Ann. 18.977 (Callaghan 1980)) provides in part that: "The commission shall adopt rules and regulations governing the carrying out of this act the duties and responsibilities of licensees in the proper conduct and management of their licensed places." In *Mallchok v. Liquor Control Commission*, 72 Mich.App. 341, 249 N.W.2d 415 (1976) the court held that the commission failed to comply with the statutory procedural limitations and had denied a license on the basis of an unwritten policy rather than a rule or regulation. Under the Administrative Procedures Act of 1969 the Commission was required to "promulgate, process and publish all its rules and regulations." As stated in *In re McCormick, supra*, it was because of *Mallchok v. Liquor Control Commission, supra*, that the Commission adopted the emergency rules. Since in this case the transfer occurred in 1977, it was subject not to Rule 19 but to Emergency Rule 23(6) which, as noted in *In re McCormick, supra*, did not prohibit the taking of a security interest in a liquor license. As Bierman failed to perfect his lien as required by Michigan Statutes, his lien is subordinate to the tax lien of the U.S.

## THE LIQUOR LICENSES AS PROPERTY OF THE ESTATE

■ Under 11 U.S.C. § 541, the filing of a petition under Title 11 creates an estate comprised of all legal and equitable interests of the debtor in property as of the commencement of the case. Several courts have held that a liquor license is an asset of the estate. All of the Michigan bankruptcy court decisions cited above on the issue of perfection of a security interest in a liquor license, either held or assumed that a liquor license was property of the estate.

*In re Quaker Room*, 90 F.Supp. 758 (S.D.Cal.1950) held that a California Liquor License was property of the trustee even under the Bankruptcy Act of 1898. See also *In re Aegean Fare, Inc.*, 35 B.R. 923 (Bankr.D.Mass.1983).

Therefore, I hold that the liquor license is property of the estate and held subject to the interest of the United States. For the same reasons that the lien of Bierman is subordinate to the U.S. it is subordinate to the interest of the estate.

## EQUITY

■ The bankruptcy court is a court of equity. Where appropriate it will decide issues on equitable principles. Here, one must sympathize with Bierman. He claims that he was informed that he was prohibit-

ed from perfecting his security interest in the liquor license and could not even create such an interest. But there is a limit to how far a court can go in applying equity. In *Hedges v. Dixon County*, 150 U.S. 182, 14 S.Ct. 71, 37 L.Ed. 1044 (1893) where a bond issue exceeded the legal limitation, and the bond holders claimed that there should be an implied promise to pay, the demurrer of the debtor county was sustained. The court stated at p. 74:

> "The established rule, although not of universal application, is that equity follows the law, or as stated in *Magniac v. Thomson*, 15 How. [281] 299 [14 L.Ed. 696], 'that, whenever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim 'equitas sequitur legem' is strictly applicable.'"

See also *City of Litchfield v. Ballou*, 114 U.S. 190, 5 S.Ct. 820, 29 L.Ed. 132 (1885).

The Michigan legislature adopted the Uniform Commercial Code with certain modifications. Neither the Commission nor any of its employees could change the rights and duties established by that Code. The purpose of Article IX of the U.C.C. was to protect certain purchasers, and creditors and also trustees appointed under the Bankruptcy Act of 1898 and later the Bankruptcy Reform Act of 1978 to administer debtors' estates for the benefit of the creditors. The acts of the agents of the Commission could not estop such purchasers, creditors, and trustees from taking those acts available to them in subordinating unperfected liens.

### DISTRIBUTIONS

Distribution will be made in accordance with 11 U.S.C. § 724(b). There has been raised the question as to penalties and post petition interest on the claim of the U.S. It would appeal that tax claims include penalties. 11 U.S.C. § 507(a). Post petition interest is allowed on all tax claims in full. 11 U.S.C. § 726(a)(5). Would the fact that the U.S. has an allowed tax lien change this status of post petition interest? The claim of the U.S. is a secured claim.

11 U.S.C. § 506(a); *In re Busman*, 5 B.R. 332 (Bankr.E.D.N.Y.1980).

11 U.S.C. § 506(b) provides:

> "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."

There are problems with an obvious ambiguity under this section, see 3 Collier on Bankruptcy 506-36 & 506-37; *In re Busman, supra*. But, § 506 only allows interest where the collateral is of a value greater than the amount of the claim. Since in this case the secured claim of the I.R.S. amounts to $128,711.16 and the liquor license sold for $22,000.00 this issue is moot. The same would be true as to penalties.

Order may be entered holding that the tax lien of the United States is superior to the interest of Bierman and the estate subject to the provisions of 11 U.S.C. § 724(b).