**In the Matter of EAGLES NEST, INC., Debtor.**

**Bankruptcy No. 84–11097.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Feb. 5, 1986.

David Peebles, Michael R. McEntee, Fort Wayne, Ind., for debtor.

Kevin L. Likes, Auburn, Ind., for movant.

## ORDER

ROBERT K. RODIBAUGH, Chief Judge.

Suzanne Frazier, f/k/a Suzanne Bangs (Frazier), filed a motion for relief from stay to allow the Indiana Alcoholic Beverage Commission (ABC) to reissue license No. RR92–16729 in her name. Neither the debtor-in-possession while this case was in chapter 11 nor the trustee after it was converted to chapter 7 has addressed this motion. This matter was taken under advisement August 26, 1985.

This case raises an issue of first impression in Indiana. The interaction between state liquor control laws, and the Uniform Commercial Code (UCC) has, on a national level, lead to strikingly diverse treatment of 'secured' creditors. The various results are reached through interpretations of similar statutory language which accord different weights to competing policy concerns.

Frazier sold her business, the Churubusco Green Grill, as a going concern together with her Three-Way liquor license by a Conditional Sales Contract on April 7, 1980. The sale included equipment, inventory and good will but no real estate. The purchasers, the debtor's predecessors in interest, executed an official, 'Consent to Transfer,' which authorized the ABC to reissue the license in Frazier's name. No financing statement was ever filed. The executed consent was held by the Churubusco State Bank which acted as an escrow agent. The purchasers incorporated the business under the name 'Eagles Nest, Inc.,' and subsequently defaulted on their contract payments. Frazier served a notice of default on September 25, 1984; the default was not cured.

The escrow agent released the Consent to Transfer to Frazier who initiated the reissuance process with the ABC. The Indiana Department of Revenue (IDR) had lodged a protest against the license for unpaid sales taxes. Frazier paid these taxes, $5,164.38, as a requirement of the reissuance process. Frazier subsequently brought suit in the Whitley Circuit Court on November 29, 1984 for breach of the conditional sales contract. The debtor filed a chapter 11 petition on December 11, 1984. On January 10, 1985 this court enjoined the reissuance of the license and Frazier responded with this motion for relief from the automatic stay. During the pendency of this case it was converted to a chapter 7 liquidation.

Frazier's argument is straightforward. She contends that the liquor license is personal property, subject to the Uniform Commercial Code. The Conditional Sales Contract is a writing which represents an intent to create a security interest. The Consent to Transfer is an instrument, and, as such, Frazier was properly perfected through constructive possession of it by the escrow agent. She cites authority for the broad scope of the Uniform Commercial Code and for the characterization of the license as 'property.' Frazier states this is a question of first impression in Indiana and refers to 11 U.S.C. § 362(g) as placing the burden of proof in this matter on the debtor.

The statutory provisions involved, the Indiana Uniform Commercial Code and the Indiana Alcoholic Beverages Act, are substantially similar to many other jurisdictions; therefore, it is appropriate to draw upon the analysis of other courts. The apparent conflict between the commercialization policy of the UCC and the temperance policy of many state alcoholic beverage control laws has been resolved, often without recognition, by many courts. The majority position generally gives determinative weight to those considerations which favor the maximization of commerce. The minority position gives greater deference to local legislative concerns over the implications of alcoholic beverage consumption within the community.

The minority, or temperance position is based on the proposition that, a legislative

determination that the maximization of alcoholic beverage consumption within a community is not an appropriate goal, is entitled to some deference as not completely irrational. The history of this nation's experience with alcoholic beverages gives support to advocates of moderation.

I.C. 7.1-1-1-1 (Burns 1985) states that the legislative goals for the Alcoholic Beverages Act are—

(a) To protect the economic welfare, health, peace and morals of the people of this state;

(b) To regulate and limit the manufacture, sale, possession, and use of alcohol and alcoholic beverages; and,

(c) To provide for the raising of revenue.

The Act interferes with commerce to a constitutionally permissible degree. *Fry v. Rosen*, 207 Ind. 409, 189 N.E. 375, appeal dismissed, 293 U.S. 526, 55 S.Ct. 143, 79 L.Ed. 636 (1934). The Act is to be construed liberally, as an exercise of the police power, to effectuate its goals. I.C. 7.1-1-2-1 (Burns 1985).

The Indiana UCC is also to be liberally construed to promote its underlying purposes and policies which are:

—to simplify, clarify and modernize the law governing commercial transactions;

—to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

—to make uniform the law among the various jurisdictions. I.C. 26-1-1-102 (Burns 1985). ·

The UCC is an important element of modern business. It promotes efficiency through predictability. It is also the subject of much litigation and many law school classes. The effect of this education of the bench and the bar is to instill a sense of expertise. A practitioner identifies a 'UCC issue' and then determines whether other law affects the results. This ethnocentric mind set presumes the UCC as the central facet of our system of laws. This approach to a problem would always yield a result which is biased to the pro-commerce or pro-business result.

A neutral analysis interprets both aspects of the law to implement the legislative intent expressed in each. If possible, the court must avoid an interpretation which would leave one law squarely opposed to the other or render any provision of either meaningless. A stated policy of the alcoholic beverage laws is to limit commerce in such beverages; this specific statement should prevail over the more general, "expansion of commercial practices" goal of the UCC. I.C. 26-1-1-102 (Burns 1985). Bankruptcy is fundamentally about business. Debtors can not pay their bills and seek relief. Bankruptcy courts are specialized and have a recognized expertise in a technical area. It would be all too easy to identify this case as presenting a UCC issue and then to apply the UCC to the exclusion of the alcoholic beverage laws.

Property interests are created and defined by state law. There is no reason such interests should be analyzed differently in a bankruptcy proceeding. Uniform treatment of property interests serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961). This analysis applies with equal force to security interests. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). I.C. 7.1-3-1-2 (Burns 1985) predates the UCC and provides that, "A permittee shall have no property right in a ... permit of any type." While this statute has been literally applied, *State ex. rel. Zeller v. Montgomery Circuit Court*, 223 Ind. 476, 62 N.E.2d 149 (1945), the interest of a permittee in his license has long been recognized as property entitled to constitutional protection. *Midwest Beverage Co. v. Gates*, 61 F.Supp. 688 (N.D.Ind.1945). *Lake County Beverage Co., Inc. v. 21st Amendment, Inc.,*

Ind.App., 441 N.E.2d 1008 (1982). There is virtually no Indiana case law in this area because the jurisdiction of the state courts has been seriously restricted by I.C. 7.1–3–19–2 (Burns 1985). *State ex rel. Ale House, Inc., v. Rueger,* Ind.App., 406 N.E.2d 292 (1980). An additional impediment is the lack of any recognized legislative history for in the Indiana Code. But see, I.C. 7.1–3–22–8 (Burns 1985).

While an alcoholic beverage permit or license is not 'property' it can be quite valuable. One recent case dealt with a drinking establishment which, like the debtor, owned no real estate or significant personal property. The permit was sold for $90,000.00. *In re O'Neill's Shannon Village,* 750 F.2d 679; 39 UCC Rep. 1781 (8th Cir.1984).[1]

The court has considered the policies behind both the UCC and the Alcoholic Beverage Laws and has reached an interpretation which gives full effect to both laws. The debtor's interest in the permit is property in a constitutional sense and becomes property of the estate. *Fisher v. Cushman,* 103 F. 860 (1st Cir.1900); 11 U.S.C. § 541. The license is subject to attachment by a federal tax lien pursuant to 26 U.S.C. § 6321. *In re American Way Food Service Corp.,* 48 B.R. 79 (Bkrtcy.W.D.Mich. 1985). The permittee's interest in the license would be a "general intangible," *In re Coed Shop, Inc.,* 435 F.Supp. 472 (N.D. Fl.1977) aff'd 567 F.2d 1367 (5th Cir.1978); I.C. 26–1–9–106, except that it is not property within the scope of the Indiana UCC. I.C. 7.1–3–1–2 (Burns 1985). "Article 9 applies to any transaction which is intended to create a security interest in personal property as defined [by state law]." *In re Ratcliff Enterprises, Inc.,* 44 B.R. 778, 780; 39 UCC Rep. 1794, 1797 (Bkrtcy.E.D. Mich.1984). Even if the UCC applied, Frazier would be unperfected, since filing a financing statement with the secretary of state is the only way to perfect a security interest in a general intangible. I.C. 26–1–

9–302 (Burns 1985). The bankruptcy estate takes the license free and clear of any security interest, since a security interest is not perfectible under Indiana law and would not be enforceable against the Indiana Alcoholic Beverage Commission. Alcoholic beverage permits have historically not been assignable at will. *Godfrey v. State,* 5 Blackf. 151 (1839). At least one court has not made the distinction between property of the estate and property within the scope of a particular state's UCC. *In re Matto's, Inc.,* 9 B.R. 89 (Bkrtcy.E.D.Mich. 1981).

This, admittedly minority, position has been reached by every court which has actually examined the interaction of similar state liquor control laws and the UCC. *In re Midland Services, Inc.,* 10 UCC Rep. 499 (D.C.Neb. 1971); *In re Revocation of Liquor License No. R–2193,* 72 Pa.Commw. 367, 456 A.2d 709, 35 UCC Rep. 949 (1983). Federal courts in particular should give careful deference to the articulated policies of state legislatures. Some bankruptcy courts sitting in Michigan have reached a similar result, holding that no legal security interest can be created in a permit. *In re Rudy's, Inc.,* 23 B.R. 1 (Bkrtcy.E.D. Mich.1981), but see particularly *In re American Way Food Service Corp.,* 48 B.R. 79 (Bkrtcy.Mich.1985). This result has been tempered by the enforcement of an equitable lien in degradation of the trustee's powers as a hypothetical lien creditor. *Matter of Gullifor,* 47 B.R. 450 (D.C.E.D.Mich.1985). This contravention of the Bankruptcy Code has been soundly criticized. *In re Moisson,* 51 B.R. 227 (Bkrtcy.E.D.Mich.1985). Specifically enforcing Frazier's consent to transfer would be analogous to enforcing an unrecorded deed or other secret lien.

A permittee's commercialization and promotion of the consumption of alcohol will be hindered if it can not commit the capital represented by its permit to other uses. Without the ability to provide a security

---

1. Senior Circuit Judge Swygert, of the 7th Circuit, sat by designation on this 8th Circuit panel; he also, while a district judge, authored *Midwest* *Beverage Co. v. Gates,* 61 F.Supp. 688 (N.D.Ind. 1945) on behalf of a three-judge panel.

interest in a liquor license, the opportunity to obtain financing is substantially impaired. *In re Ratcliff Enterprises, Inc.,* 44 B.R. 778, 781, 39 UCC Rep. 1794, 1798 (Bkrtcy.Mich.1984). The reduced financing available due to I.C. 7.1–3–1–2 (Burns 1985) could reasonably, in the conception of the legislature, promote a policy of moderation in the consumption of alcoholic beverages. Such a policy of moderation is also consistent with the current restrictions on the number of permits issued in Indiana. The court is fully aware of the many decisions which reach a contrary result, but is of the opinion that this result more accurately promotes the interests of the State of Indiana in both commerce and alcoholic beverages.

Wherefore, since it is impossible to create an enforceable security interest in an alcoholic beverage permit in Indiana, the Motion for Relief from Stay is DENIED.