**In re NATIONAL EQUIPMENT & MOLD CORP., Debtor.**

**NATIONAL EQUIPMENT & MOLD CORP., Plaintiff,**

v.

**The METROPOLITAN BANK OF LIMA, Defendant.**

**Bankruptcy No. 85–0078.
Related Case No. 83–00264.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Aug. 8, 1986.

Thomas J. Schank, Toledo, Ohio, for plaintiff.

Howard B. Hershman, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Motion To Dismiss and Motion For Determination of Core Proceeding filed by the Defendant in the above entitled adversary action. The parties have filed their arguments relative to the merits of these Motion and have had the opportunity to respond to the arguments made by opposing counsel. The Court has reviewed those arguments as well as the entire record in this case. Based upon that review and for the following reasons the Court finds that this case is a core proceeding within the scope of 28 U.S.C. Section 157(b). The Court also finds that the Motion To Dismiss should be granted in part and denied in part.

## FACTS

The Plaintiff in this case, though captioned as being the Debtor-Corporation, is actually the Trustee in the underlying Chapter 7 bankruptcy proceeding. The Defendant is a bank with which the Debtor has had ongoing business relationships. On or about May 13, 1981, the Debtor entered into a transaction with the Defendant, whereby the Defendant agreed to loan the Debtor the sum of Two Hundred Fifty Thousand and no/100 Dollars ($250,000.00). In return for this loan, the Debtor executed a promissory note and security interest in favor of the Defendant. As part of the collateral for that loan, the Debtor gave the Defendant a security interest in its accounts receivable. The security agreement provided, in part, that the Defendant could demand additional security from the Debtor at any time and for any reason it felt uncertain as to the Debtor's ability to repay the obligation. Failure to provide additional security constituted grounds upon which to declare the obligation in default. The agreement also contained the following provisions:

The undersigned agrees, until payment of all indebtedness and of liability of every kind of the undersigned to the Bank, whenever incurred, or until written notice to the undersigned by said Bank, to make collection of the said Receivables as agent for the Bank, and remit the proceeds thereof forthwith to the Bank.

The proceeds of all collections of the Receivables shall be the absolute property of the Bank, and they shall not be deposited or mingled with any other moneys or funds of the undersigned. The Bank, by any officer, employee, or attorney, is hereby authorized to endorse the name of the undersigned upon any checks or bills of exchange received in payment of said Receivables. The Bank may at any time, and without notice to the undersigned, notify the persons obligated or liable in connection with the Receivables, of this assignment and may itself demand payment of and collect the Receivables ...

The Receivables, as they appear upon the ledger or other records of the undersigned shall be endorsed, "Assigned to, and owned by, The Metropolitan Bank of Lima, Ohio" or other similar endorsement approved by the Bank ...

The Bank may, at any time, if it feels insecure for any reason, call for additional security, satisfactory to it; and if the same be not furnished on demand or if the liabilities and obligations of the undersigned to the Bank are not paid and performed in accordance herewith or with the instrument or other writing evidencing the same, the undersigned shall be in default under this agreement.

When the undersigned is so in default all of the loans and other indebtedness secured hereby shall become immediately due and payable at Bank's option without notice to the undersigned and Bank may proceed to enforce payment of the same and to exercise all of the rights and remedies afforded to Bank as a secured party under the laws of the State of Ohio or otherwise possessed by Bank including, without limitation, the right to collect, sell or assign the Receivables in whole or in part either at public or private sale.

At some time prior to January 12, 1983, the Debtor deposited into its checking account with the Defendant funds which were to be used to cover the Debtor's payroll checks. At the time this deposit was made, there is alleged to have been an agreement between the parties, whereby the funds would not be set off against the outstanding indebtedness. However, on January 12, 1983, the Defendant effected such a setoff. It appears that the payroll checks subsequently issued by the Debtor were dishonored as a result of this action. It also appears that on that same day the Defendant began independent collection of the Debtor's accounts receivable. It does not appear that the Debtor was informed of a declaration of default, or that any demand for additional security was made.

On February 11, 1983, the Debtor filed its voluntary Chapter 11 Petition with this Court. In the schedules which accompany that petition, the Defendant is listed as both a secured and unsecured creditor with claims of Two Hundred Eleven Thousand Two Hundred Ninety-five and 05/100 Dollars ($211,295.05) and Eight Thousand Two Hundred Forty-three and 84/100 Dollars ($8,243.84), respectively. On April 1, 1983, the (then) Debtor-In-Possession filed an adversary action against this same Defendant. In that action, the Debtor alleged one of the causes of action which is set forth in the present Complaint. At a Hearing conducted by this Court for the purpose of showing cause why the case should not be dismissed for failure to follow the Orders of the Court, the parties indicated that they had reached "an agreement in principle" as to past and future transactions. It appears that this arrangement entailed, in part, an extension of additional credit by the Defendant to the Debtor. A review of the record finds that the parties appear to have agreed on the terms of the arrangement. However, it also appears that consummation of the arrangement was made subject to the "verification" of certain documents and final approval of the parties' officers. Although a settlement entry was prepared which set forth the terms of the agreement, that entry was never executed by either the Debtor or this Court. It should be noted that based upon the representations made by the parties at that hearing, the Court dismissed the adversary proceeding.

On March 7, 1985, the Debtor's case was converted to a proceeding under Chapter 7. It appears that during the course of both the reorganization and liquidation phases of that case, the collateral subject to the Defendant's security interest has been substantially liquidated. The proceeds of that liquidation effort have been applied to the Debtor's obligation to the Defendant. At the present time, it appears that the Defendant has remaining an unsecured claim in the approximate amount of Ninety-two Thousand Two Hundred Forty-four and 64/100 Dollars ($92,244.64).

In an effort to recover assets for the estate, the Trustee has filed the above entitled adversary proceeding. In his first cause of action, the Trustee seeks an order requiring the Defendant to turn over to the estate the amounts collected from the Debtor's accounts receivable during the period which preceded the filing of the Chapter 11 Petition. As a basis for that relief, the Trustee alleges that the Defendant violated the terms of the security agreement by commencing collection of the accounts receivable without first declaring a default or demanding additional security. In a second cause of action, the Trustee alleges that use of the funds deposited in the Debtor's checking account to set off the indebt-

edness constitutes a wrongful conversion of the Debtor's property.

In the answer filed by the Defendant, it is admitted that it exercised the right to setoff against the funds deposited by the Debtor, and that it collected certain of the Debtor's accounts receivable. However, it denies that the exercise of these rights was in violation of the security agreement or any other enforceable contract. As an affirmative defense, the Defendant contends that the merits of these actions were resolved as a part of the settlement which is alleged to have been reached in the prior adversary proceeding between the parties, despite the fact that the agreement was never executed.

The Motions presently before this Court ask for two determinations relative to the two causes set forth in the Complaint. The first request seeks a determination as to whether or not either cause is a core proceeding within the scope of 28 U.S.C. Section 157(b). In support of its contention that they are not, the Defendant argues that an action for conversion is one which arises under state law and is, therefore, only related to a case arising under Title 11. He also argues that because of this ancillary status, the case does not fall within the scope of Section 157(b). The Trustee does not address the question of whether or not either of these causes are core proceedings.

The second request seeks a determination as to whether or not there is any basis in law or fact for the actions asserted in the Complaint. The Defendant argues that the collection of accounts receivable was an action which, when exercised, did not effect any interest the Debtor had in the accounts. The Defendant further argues that since the Debtor had no interest in the accounts, and since an interest in the property sought is prerequisite to bringing the action, the Debtor is without a basis for the action. The Trustee summarily opposes these arguments, contending that the collection of accounts receivable, in a manner which allegedly violated the terms of the security agreement, does not divest the Debtor of its interest in the accounts. In this regard the Trustee asserts that the accounts are property of the estate, and that despite the Defendant's security interest the Debtor has the right to possession of the proceeds. In addition, the Trustee rejects the assertion that a prior resolution of the parties' dispute had been reached, arguing instead that there remained unperformed certain acts which were, under the "agreement in principle", to be accomplished prior to consummation of the agreement.

## LAW

### I

■ With regard to the determination of whether either of these actions are core proceedings, the provisions of 28 U.S.C. Section 157(b) state in pertinent part:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(E) orders to turn over property of the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship ...

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

Since the enactment of this section there have been several decisions which have sought to interpret its provisions. Such interpretation is necessary in light of the

absence of any guidance within the statute itself. A review of those cases finds that a degree of latitude is afforded to the characterization of actions as core proceedings. Where an action arises under both state law and under Title 11, such actions are includeable within the scope of 28 U.S.C. Section 157(b). *See, National Equipment & Mold Corp. v. Apollo Tire Co., Inc. (In re National Equipment & Mold Corp.),* 60 B.R. 133 (Bkcy.N.D.Ohio 1986), *Baldwin-United Corp. v. Thompson (Matter of Baldwin-United Corp.),* 48 B.R. 49 (Bkcy. S.D.Ohio 1985).

■ A review of the present case finds that the first cause of action is brought pursuant to 11 U.S.C. Section 542. In this action, the Trustee seeks a turnover of the accounts receivable which were collected by the Defendant prior to the filing of the Debtor's Petition. As previously indicated, the Trustee alleges that the Defendant's collection did not divest the Debtor of its interests in those accounts. In that regard, it is apparent that in any action brought under 11 U.S.C. Section 542, one of the fundamental determinations which must be made is whether or not the Debtor has an interest in the property. Although that determination must be made under state law, that fact does not negate the authority to require a turnover of estate property which otherwise exists under Title 11. Since an action for turnover is specifically enumerated as a core proceeding, see, 28 U.S.C. Section 157(b)(2)(E), and since the question of state law does not, in and of itself, render an action non-core, *see,* 28 U.S.C. Section 157(b)(3), it must be concluded that the Trustee's first cause of action is a core proceeding.

■ As to the second cause of action, it is readily apparent that an action for conversion is one which arises under state law. However, the thrust of a conversion action is to recover the value of that which was wrongfully taken from the plaintiff. *See,* 18 Ohio Jur.3d *Conversion and Replevin* Section 1. Not unlike actions brought under 11 U.S.C. Section 542, a fundamental question which must be addressed in such actions is whether or not the plaintiff had an interest in the property taken. Furthermore, conversion actions only seek to recover that which the plaintiff is otherwise entitled to have. Since an action under Section 542 is intended to accomplish substantially the same objective, it would not be inconsistent with the fundamental concern of Section 157(b)(2)(E) to characterize conversion actions as actions to recover property of the estate. *See, National Equipment & Mold Corp. v. Apollo Tire Co., Inc.,* supra. Since such actions are specifically designated as core proceedings under the provisions of 28 U.S.C. Section 157(b) it must be concluded that the Trustee's action for conversion is also a core proceeding.

## II

The next question which must be addressed is whether or not either cause of action should be dismissed at this juncture in the proceeding. It is well established that motions to dismiss should not be granted unless it appears that a plaintiff will be unable to demonstrate any set of facts which would entitle him to the relief requested. *Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784 (8th Cir. 1979), *Hilliard v. Williams,* 465 F.2d 1212 (6th Cir.1972), *Park Hills Music Club, Inc. v. Bd. of Ed. of City of Fairborn,* 512 F.Supp. 1040 (S.D.Ohio 1981). In making that determination, the facts and allegations stated in the Complaint must be accepted as true and construed in a manner most favorable to the plaintiff. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434 (3rd Cir. 1977), *Brock & Davis Co., Inc. v. Charleston Nat. Bank,* 443 F.Supp. 1175 (S.D.W. Va.1977).

■ A review of the Trustee's first cause of action finds that he is seeking a turnover of the proceeds which were collected by the Defendant from the Debtor's accounts receivable. This turnover is sought pursuant to 11 U.S.C. Section 542, the provisions of which state in pertinent part:

(a) ... an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of

this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

As previously indicated, it is implicit in that statute that the debtor have an interest in the property sought. Where a debtor does not have an interest in the property, it does not become part of the estate, *see*, 11 U.S.C. Section 541(d), and cannot be made subject to an order of turnover. *See, Turner v. Burton (In re Turner)*, 29 B.R. 628 (Bkcy.D.Me.1983). Therefore, it appears that the threshhold question which must be resolved is whether or not the Debtors in this case had any interest in the property the Trustee seeks to recover from the Defendant.

■ It is well established that the determination of whether or not the estate has any interest in property is made pursuant to state law. *In re Mortgage Funding, Inc.*, 48 B.R. 152 (Bkcy.D.Nev.1985), *Kempf v. Internal Revenue Service, (In re American Way Food Service Corp.)* 48 B.R. 79 (Bkcy.W.D.Mich.1985). In Ohio, an entity may sell or assign accounts receivable for use as collateral in a secured transaction. *See generally*, 48 Ohio Jur.2d *Secured Transactions* Section 67. In creating such a contract, the parties are free to establish the terms of their relationship, provided they are not contrary to law or public policy. If a debtor created a contract with a creditor regarding the use of accounts receivable as security, then the terms of that contract would determine whether or not the debtor retained any interest in the accounts which would pass to the estate upon the filing of a Title 11 petition.

■ When interpreting the terms of a contract, the Court must make such interpretations as are consistent with the intent of the parties and the purpose of the contract, *see, Wapakoneta Production Credit v. Cupp (In re Cupp)*, 38 B.R. 953 (Bkcy.N. D.Ohio 1984), *see also*, 18 Ohio Jur.3d *Contracts* Section 136. A review of the security agreement appears to reflect that the parties intended for the Debtor to convey ownership of its accounts receivable to the Defendant. Although not expressed in language which is customarily employed in a conveyance of title, the security agreement states that "The proceeds of all collections of the Receivables shall be the absolute property of the Bank, and they shall not be deposited or mingled with any other moneys (sic) or funds of the (Debtor)." This language appears consistent with the intent of the parties to create an arrangement, in which Defendant could be assured of repayment from the Debtor's accounts. This language clearly favors a finding that the Debtor intended to convey or assign its rights in the accounts to the Defendant for this purpose. This interpretation is supported by the remaining terms of the contract, wherein the Defendant is afforded the right to collect the accounts directly from the account obligors without having to route the collection process through the Debtor. It is also supported by the fact that the Defendant was empowered to endorse the name of the Debtor on any check or bills submitted by the account debtors as payment on the account. Such terms so clearly express the intent of the parties that there is no reasonable or rational interpretation which can be used to assert that the Debtor intended to retain any rights in the accounts subsequent to its execution of the contract. In the absence of any such rights, it must be concluded that the Debtor had no interest in the accounts which passed to the estate with the filing of the petition. It must also be concluded that without any rights to the accounts, the Trustee is not entitled to a turnover under 11 U.S.C. Section 542.

■ Although the Trustee has argued that the Defendant violated the security agreement by collecting the accounts without first demanding additional security or

declaring a default, a review of the security agreement does not reflect any terms which restrict the exercise of the Defendant's collection rights. Under the contract, the Defendant's authority to collect for itself the Debtor's accounts receivable was not conditioned or predicated upon the declaration of a default or the denial of additional security. While the Trustee has plead allegations which assert an action based upon those failures, the terms of the contract will not support such an action. Without asserting, with greater specificity, the grounds upon which those failures give rise to an actionable breach of the agreement, it does not appear that the Trustee will be able to demonstrate any fact which will entitle him to recover the account under 11 U.S.C. Section 542.

Furthermore, even if the security agreement is not construed as conveying the Debtor's interest in the proceeds of the accounts, the Trustee will not be able to recover the amounts collected by the Defendant. As indicated by the provisions of Ohio Revised Code Section 1309.13, the concept of "title" is of relative unimportance in determining the rights of parties involved in secured transactions. If the Defendant's collection of the Debtor's accounts is viewed as a repossession rather than a collection of its own property, the fact that the security interest did not convey "title" to the accounts would not preclude the Defendant from exercising dominion over the proceeds. The provisions of Ohio Revised Code Section 1309.45 and 1309.46, which state in pertinent part:

Section 1309.45.

(A) When so agreed and in any event on default, the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him whether or not the assignor was theretofore making collections on the collateral ...

Section 1309.46.

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.

authorize the Defendant to take possession of the accounts and apply the proceeds to the indebtedness. Although the statute indicates that possession may only be exercised upon a default, the provision of the contract which states that "The Bank may at any time, and without notice to the (Debtor) ... collect the Receivables" effectively waives the requirement that there be a declaration of default. Therefore, even under this interpretation of the facts alleged in the Trustee's Complaint, he will not be entitled to recover.

Therefore, based upon the foregoing analysis, it must be concluded that the Trustee will be unable to demonstrate any set of facts which, even if proven, will entitle him to recover the funds collected by the Defendant. As previously indicated, the terms of the security agreement divested the Debtor of any rights in proceeds of the accounts. As a result, there is unavailable to the estate any rights to those accounts which may be used as the basis for an action under 11 U.S.C. Section 542. In the absence of any demonstrable interest, no grounds for the recovery of those funds exists. Accordingly, it must be concluded that the Trustee's first cause of action, as it relates to the recovery of funds collected by the Defendant from the Debtor's accounts receivable, should be dismissed.

### III

As for the Trustee's second cause of action, although the action is based upon an alleged conversion, the identical threshhold question must be resolved to determine if there exists any merits for the suit. That question involves the determination of whether or not the Debtor had any rights in the property taken. The property involved in this alleged conversion is the funds deposited by the Debtor into its checking account which were consumed by the Defendant in a setoff of the Debtor's obligation. It should be noted that the

Trustee's first cause of action makes certain allegations which can be interpreted as including, within that cause, an action to recover the deposited funds on the basis of 11 U.S.C. Section 542. To the extent the actions involving the use of these funds are addressed by the Motion To Dismiss, they will be jointly considered for purposes of this Order.

 A conversion of property occurs when an entity wrongfully exercises dominion over the personal property of another. *See, McGraw v. Jordan (In re Bell & Beckwith),* 47 B.R. 712 (Bkcy.N.D.Ohio 1985). A review of the alleged facts finds that the funds deposited in the Debtor's account were funds over which the Debtor intended to remain in control. At the time they were deposited, there is alleged to have been an agreement between the parties which temporarily suspended the Defendant's right to exercise a setoff against these funds. If the Trustee were able to demonstrate the existence of such an agreement, that the Debtor did not relinquish its "ownership" rights to these funds, and that the Defendant breached its agreement not to exercise a setoff, then the Trustee would be entitled to recover based upon the Defendant's wrongful conversion. Similarly, if the Trustee were able to demonstrate that the Debtor retained such rights in the funds which entitled it to exercise some dominion over their disposition, and that those rights existed at the time the petition was filed, then the Trustee would be entitled to a turnover of those funds under the provisions of 11 U.S.C. Section 542.

Therefore, based upon the allegations set forth in the Complaint, it appears as though the Trustee will be able to demonstrate some facts which, if proven, would entitle him to the relief sought. However, this relief is limited to the extent it seeks to recover those funds deposited by the Debtor in conjunction with the alleged agreement with the Defendant. It does not, for the reasons previously indicated, allow the Trustee to pursue, under any grounds stated in the Complaint, the funds collected by the Defendant from the Debtor's accounts receivable. Accordingly, it must be concluded that the Motion To Dismiss, as it relates to the allegation for recovery of the deposited funds, must be denied.

It should be noted that the Defendant has asserted, within the context of its Motion, that any disputes set forth in the Complaint were resolved as a result of the prior adversary proceeding. In support of this assertion the Defendant has offered the transcript of the Court's show cause hearing. This transcript reflects the parties' discussions relative to the pending settlement of that case. The inclusion of the transcript requires this Court to consider the Motion To Dismiss, to the extent it argues its accord and satisfaction defense, as a Motion For Summary Judgment. *See,* Bankruptcy Rule 7012, Federal Rule of Civil Procedure 12(c).

It is well established that a prior accord and satisfaction is an affirmative defense which must be both plead and proven. *See,* Bankruptcy Rule 7008, Federal Rule of Civil Procedure 8(c), *see also,* 15 Ohio Jur.3d *Compromise, Accord, & Release* Section 59. A review of the transcript finds that the statements made by counsel reflect that the parties were in the process of developing a settlement of their disputes and an arrangement for future transactions. The language cited by the Defendant, if read by itself, would lead this Court to believe that an agreement had been consummated. However, a review of the entire proceeding indicates that no such agreement had been reached. Rather, it appears that the parties had agreed to the terms of their arrangement, but conditioned final acceptance upon the completion of other tasks. Since a reading of the entire transcript does not reflect that an agreement had been reached relative to the disputes between the parties, this Court cannot hold that the evidence before it conclusively establishes the existence of such an agreement. As a result, there remain questions of fact which cannot be resolved based upon the available evidence. The presence of such a question precludes a

summary adjudication. Accordingly, it must be concluded that to the extent the Motion To Dismiss asserts that this action should be dismissed based upon the prior accord and satisfaction, the Motion should be denied.

In reaching these conclusions the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the causes of action set forth in the Complaint be, and are hereby, declared to be core proceedings.

It is FURTHER ORDERED that the Motion To Dismiss, to the extent it addresses the allegations in the Complaint as to the recovery of the Debtor's accounts receivable, be, and is hereby, GRANTED.

It is FURTHER ORDERED that all allegations in the Complaint relating to the recovery of the Debtor's accounts receivable from the Defendant be, and are hereby, DISMISSED.

It is FURTHER ORDERED that the Motion To Dismiss, to the extent it addresses the allegations in the Complaint as to the recovery of the monies deposited by the Debtor with the Defendant, be, and is hereby, DENIED.