Ann Amelia Selle *v.* Mary E. Short, Executrix of the Estate of Wilfred J. Selle, Deceased.

[No. 3-1073A137.  Filed April 29, 1975.]

*George G. Ponton, Power & Ponton,* of Monon, for appellant.

*Lester L. Wilson,* of Winamac, for appellee.

Garrard, J.—When Wilfred Selle died, the executrix of his estate (Short) petitioned the court for authority to continue operation of the tavern Wilfred had inherited from his father. Wilfred's widow (Ann) objected, asserting that upon Wilfred's death she had become the owner of the tavern business.

Trial to the court resulted in a determination that (a) the tavern business was an asset of the estate; (b) Ann had no interest in the business except as a distributee of the estate; and (c) the estate should, upon securing the approval of the Alcoholic Beverage Commission, continue operation of the business.

Ann's appeal asserts this decision was contrary to law and was not sustained by sufficient evidence. The controversy focuses upon the fact that shortly before his death, Wilfred had caused his three-way liquor permit to be reissued in the style: "Wilfred Selle and Ann Amelia Selle".

The underlying facts disclosed that Wilfred had inherited the tavern from his father in 1948. In 1970 he married Ann. Prior to the marriage, the parties executed an antenuptial agreement whereby each waived any interest in the property of the other except that Ann was to have a life estate in a parcel of real estate not relevant to these proceedings.

Thereafter, Wilfred executed a will (which was ultimately probated) in which he bequeathed to Ann the above-mentioned life estate together with one third of his personal property. The residue was to be divided among his four children, but one son was to be given opportunity to purchase the personal property and real estate used in connection with the tavern.

It appears that Ann was active in the conduct of the business, and that for a period of time prior to his death, Wilfred was in poor health.

In November 1972, Wilfred applied to the Indiana Alcoholic Beverage Commission to transfer his three-way liquor permit into the names of "Wilfred Selle and Ann Amelia Selle".

In connection with that application, which was ultimately granted, Wilfred advised the commission that the applicants for transfer (Wilfred and Ann) were the owners of the premises where the business was conducted. However, in fact, no effort was made to create either an ownership or lessee interest in Ann in the real estate. Wilfred also furnished to the commission at its request, after the application to transfer the license had been filed, a "Bill of Sale" which recited that he thereby bargained and sold to Wilfred J. Selle and Ann Amelia Selle, husband and wife, the stock-in-trade and certain itemized furniture and fixtures of Selle's Lunch Room. The instrument recited that the transfer and conveyance made were conditioned upon and title would not pass "until

transfer is approved by the Indiana Alcoholic Beverage Commission". It does not appear that a signed copy of this instrument was delivered to Ann.

On appeal, Ann urges that the decision was contrary to law because the court failed to apply the provisions of IC 1971, 32-4-1-1 (Burns Code Ed.)[1] to the three-way liquor permit and conclude that the ownership of the permit and the tavern were in Ann upon Wilfred's death. Secondly, she urges that the evidence was insufficient to establish that the personal property of Selle's Lunch Room together with the liquor permit were assets of the decedent's estate.

To consider these assertions, it is first necessary to review some of the statutory provisions regarding the sale of alcoholic beverages.[2]

The statute provides that a liquor retailer's permit may be

---

1. "32-4-1-1 [51-104]. *Rights of survivors of joint tenants holding personalty—United States government obligations—Household goods.*

(a) Except as to obligations of the United States government, held jointly or on which there appears the name of surviving coowner, or as to certain personal property, tangible or intangible, acquired by a husband and wife during coverture, as provided for in subsection (c) of this section, the survivors of persons holding personal property in joint tenancy shall have the same rights only as the survivor of tenants in common, unless otherwise expressed in the instrument.

(b) The survivor of persons holding obligations of the United States government either jointly or as coowners shall become the sole owners of such obligations upon death of the joint owner and/or coowner.

(c) Household goods acquired during coverture and in the possession of both husband and wife and any promissory note, bond, certificate of title to a motor vehicle, certificate of deposit or any other written or printed instrument evidencing an interest in tangible or intangible personal property in the name of both husband and wife, shall upon the death of either become the sole property of the surviving spouse unless a clear contrary intention is expressed in a written instrument; Provided, however, that this shall not create a presumption that the exercise of the right of the surviving spouse to the immediate ownership or possession and enjoyment of such property shall be deemed a transfer taxable under the provisions of IC 1971, 6-4-1-1—6-4-1-40 [Burns §§ 7-2401—7-2441]. [2 R.S. 1852, ch. 9, § 4, p. 245; Acts 1949, ch. 145, § 1, p. 383; 1971, P.L. 422, § 1, p. 1969.]

2. After Wilfred's death but prior to the hearing on Short's petition, the 1973 amendments to the alcoholic beverage statutes (IC 1971, 7.1) became effective. Those amendments expressly provide that they were intended to be a codification and restatement of the laws repealed. The sections referred to in this opinion appeared in the prior law. Accordingly, only the current citation to the statutory provision will be used herein.

issued only to a person who is and continues to be the holder of a beer retailer's permit and a wine retailer's permit.[3]

The qualifications for license holders are enumerated in the provisions dealing with beer retailer's permits.[4] This section provides, in part:

"The commission shall not issue a beer retailer's permit . . . to the following persons:

\* \* \*

(c) A person who does not own the premises to which the permit will be applicable, or who does not have a bona fide lease on the premises for the full period for which the permit is to be issued; . . ."

The statute generally provides that the commission may issue permits only in conformity to the statute,[5] and that "a permittee shall have no property right" in any permit.[6]

The statute does not expressly consider joint ownership of a permit by husband and wife except that in the definitions section, it is provided that where appropriate, the singular number includes the plural,[7] and the term "person" includes "a firm, a corporation, an incorporated or unincorporated association, or other legal entity . . . ".[8] In addition, the statute prohibits issuance of a permit to a copartnership unless each member possesses all the qualifications required of an individual applicant.[9]

Finally, with respect to deceased permittees, the statute provides:

"IC 1971, 7.1-3-24-5 (Burns Code Ed. 1974 Supp.) *Deceased permittee—Continuation of business—When.* A duly appointed and qualified administrator or executor of the estate of a deceased permittee, may, with the approval of the court, continue the business conducted by the deceased permittee under the permit held by him if the administrator or executor, either himself or by an agent, also to be approved by the court, applies for and obtains the written

3. IC 1971, 7.1-3-9-8 (Burns Code Ed. 1974 Supp.)
4. IC 1971, 7.1-3-4-2 (Burns Code Ed. 1974 Supp.)
5. IC 1971, 7.1-3-1-1 (Burns Code Ed. 1974 Supp.)
6. IC 1971, 7.1-3-1-2 (Burns Code Ed. 1974 Supp.)
7. IC 1971, 7.1-1-2-4 (Burns Code Ed. 1974 Supp.)
8. IC 1971, 7.1-1-3-31 (Burns Code Ed. 1974 Supp.)
9. IC 1971, 7.1-3-21-4 (Burns Code Ed. 1974 Supp.)

consent of the chairman. [IC 1971, 7.1-3-24-5, as added by Acts 1973, P.L. 55, § 1, p. 290.]

IC 1971, 7.1-3-24-6 (Burns Code Ed. 1974 Supp.) *Successors—Qualification.* The administrator or executor or agent, must have the same qualifications to hold the permit of the deceased permittee that this title [7.1-1-1-1—7.1-5-11-16] otherwise requires of an applicant for that particular type of permit. That the administrator, executor, or agent has these qualifications shall be established by a finding of the court having jurisdiction and a copy of these findings shall accompany the application for the written consent of the chairman. [IC 1971, 7.1-3-24-6, as added by Acts 1973, P.L. 55, § 1, p. 290.]

IC 1971, 7.1-3-24-7 (Burns Code Ed. 1974 Supp.) *Surviving spouse or heir.* The surviving spouse or heir of a deceased permittee may be permitted to continue the business conducted by the deceased permittee, without probate proceedings, if the consent of the state board of tax commissioners is procured, and if the court having probate jurisdiction shall find that the surviving spouse or heir of the deceased permittee possesses the qualifications required of an applicant for that particular type of permit. A surviving spouse or heir who desires to carry on the business of the deceased permittee, as authorized by this section, must apply for and receive the written consent of the chairman. A copy of the court's findings on the qualifications of the applicant must accompany the application for written consent. [IC 1971, 7.1-3-24-7, as added by Acts 1973, P.L. 55, § 1, p. 290.]"

In its order, the trial court made the necessary findings pursuant to IC 1971, 7.1-3-24-6.

It should also be noted that the trial court's action did not purport to grant a permit to Short. Instead, pursuant to IC 1971, 7.1-3-24-5, it merely approved continuation of the business by the estate if the written consent of the alcoholic beverage commission was obtained.[10]

Ann argues that IC 1971, 32-4-1-1 relating to the joint ownership of intangibles and tangible personalty required the court to determine that she and Wilfred owned the three-way

---

10. The court was not assuming jurisdiction to compel issuance of a permit or to alter the action of the commission in suspending or revoking a permit as proscribed by IC 1971, 7.1-3-19-2. See, *Ind. ABC* v. *Johnson* (1973), 158 Ind. App. 467, 303 N.E.2d 64.

permit as joint tenants with right of survivorship and that therefore upon his death she became sole owner. Accordingly, she asserts that the court's finding that the business was an asset of the estate is not sustained by the evidence, and conversely the finding that she was not the owner was contrary to law.

The flaw in Ann's argument is that it misperceives the nature of the permit upon which she bases her claim.

> The statutes providing for the sale of alcoholic beverages only by proper licensees are an exercise of the police power.

Both the current[11] and prior enactments[12] have expressly provided that no permittee shall have any property right in a license, and this provision has been applied by our Supreme Court. *State ex rel. Harris* v. *Superior Court* (1964), 245 Ind. 339, 197 N.E.2d 634; *State ex rel. Zeller* v. *Montgomery Cir. Ct.* (1945), 223 Ind. 476, 62 N.E.2d 149.

Furthermore, under the statutory scheme, a permit may not validly be issued to one who does not own or have a bona fide lease on the premises where the business is to be conducted. It is clear from the record that Ann does not now and has never had such an interest in the premises.

Accordingly, since neither Wilfred nor Ann, as his wife, had any property right in the permit; and since the alcoholic beverage commission was vested with no discretion in denying a permit to one without an ownership or lessee interest in the premises; the permit to the extent that it purported to separately license Ann to retail alcoholic beverages was a nullity. It therefore could not create in Ann any new rights to overcome the effect of the antenuptial agreement.

With regard to the bill of sale for the stock-in-trade and fixtures, the evidence introduced at trial without objection supports the reasonable inference that it was conditioned upon a valid transfer of the license.

---

11. IC 1971, 7.1-3-1-2 (Burns Code Ed. 1974 Supp.)
12. IC 1971, 7-2-1-14 (Burns Code Ed.)

Since the purported transfer was illegal, the court properly determined that the consent of the commission inherent in reissue of the permit was vitiated and the condition precedent had not been fulfilled. Accord: *Mullikin* v. *Davis* (1876), 53 Ind. 206.

The judgment is affirmed.

Staton, P.J., and Hoffman, J., concur.

NOTE.—Reported at 326 N.E.2d 610.