Simoney B. VANEK, n/k/a Simoney B. Narmore, Appellant (Defendant Below),

v.

The INDIANA NATIONAL BANK, Appellee (Plaintiff Below).

The INDIANA NATIONAL BANK, Plaintiff,

v.

Fred VANEK and Simoney B. Vanek, n/k/a Simoney Narmore, Lawrence Lunn, Merchants National Bank & Trust Co., State of Indiana, Department of Revenue, and Rudy Agiular, Defendants.

Simoney B. VANEK, n/k/a Simoney B. Narmore, Third–Party Plaintiff,

v.

Raymond CARIC, Carol Lee Caric and Frederick Vanek, Third–Party Defendants.

No. 49A02–8804–CV–150.

Court of Appeals of Indiana, Second District.

June 26, 1989.
Rehearing Denied Sept. 21, 1989.

Joseph F. Quill, Michael J. Hebenstreit, Indianapolis, for appellant.

Christopher E. Baker, Steven L. Yount, Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Simoney B. Vanek (n/k/a Simoney B. Narmore) appeals a judgment in favor of Indiana National Bank of Indianapolis (INB).

We affirm.

## FACTS

On February 19, 1982, Simoney's husband Frederick C. Vanek (Fred) and R. Raymond Caric, Fred's brother-in-law, entered into a security agreement with INB under the name The Brothers Inc. (Brothers). The purpose of the agreement was to secure payment of a $50,000.00 loan. The agreement gave INB a security interest in restaurant equipment owned by Brothers. On that same date Simoney and Fred signed an unconditional guaranty for payment of the $50,000.00 should Brothers default on the loan. Simoney also executed a mortgage on her residence at 881 Reda Road, Indianapolis, Indiana to secure the guaranty. Brothers subsequently executed three promissory notes totalling $50,-000.00.

By March 1, 1983, the restaurant was closed. The secured equipment was sold by March 4 and $5,941.00 was applied to Brothers' debt. On June 22, 1983, INB filed a complaint seeking foreclosure of Simoney's mortgage and a deficiency judgment. Following a bench trial, judgment was entered against Simoney and the mortgage was foreclosed. Simoney appeals that judgment.

## ISSUES

Simoney raises three issues:

1. Whether the deficiency judgment was erroneous because she was not notified before the collateral was sold;

2. Whether the trial court erred by failing to offset the judgment pursuant to IC 26–1–9–507 (1988); and

3. Whether her unconditional guaranty was an enforceable contract.

## DISCUSSION

### I.

Simoney claims the deficiency judgment was erroneous because as guarantor she should have been notified by INB before the secured collateral was sold and INB failed to establish the disposition of the collateral was commercially reasonable and its value less than the debt.

INB admits it did not notify Simoney, but argues it had no duty to notify her because INB did not sell the restaurant equipment. Alternatively, INB argues that it was entitled to judgment even if it was obligated to notify Simoney because it established the disposition of the collateral was commercially reasonable and the collateral's value was less than the debt.

In Indiana a guarantor of a secured transaction, upon default of the debtor, becomes a debtor within the meaning of IC 26–1–9–501(2) (1988).[1] *McEntire v. Indiana National Bank* (1985), Ind.App., 471 N.E.2d 1216. A debtor has the right to notification by the secured party before the secured party sells the collateral. IC 26–1–9–504(3) (1988).[2] Thus if INB sold the se-

---

**1.** IC 26–1–9–501(2) (1988) states:

(2) After default, the debtor has the rights and remedies provided in IC 26–1–9–501 through IC 26–1–9–507, those provided in the security agreement and those provided in IC 26–1–9–207.

**2.** IC 26–1–9–504(3) states:

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any

cured collateral after Brothers defaulted Simoney, had a right to notification pursuant to IC 26–1–9–504(3).

■ A secured party who seeks a deficiency judgment after failing to notify the debtor as required by the statute faces a rebuttable presumption that the reasonable value of the collateral at the time of the sale was equal to the amount of the debt. *Hall v. Owen County State Bank* (1977), 175 Ind.App. 150, 370 N.E.2d 918, 928. The secured party must prove the disposition of the collateral was commercially reasonable and the collateral's value was less than the debt to overcome the presumption. *McEntire* at 1226.

Although the trial court did not determine who sold the collateral, it specifically determined the sale price of the collateral was equal to its fair value which, in turn, was less than the indebtedness owed INB. If the evidence supports that determination, the judgment is proper. In making this review, the evidence will be considered from a perspective most favorable to the judgment. *Ake v. National Educ. Ass'n—South Bend* (1988), Ind.App., 531 N.E.2d 1178, 1180.

Before the restaurant was closed on March 1, 1983, an INB loan officer had two appraisers determine the value of the restaurant equipment. The equipment was appraised at $5,000.00. Restaurant suppliers were contacted about purchasing the equipment. A deli case was sold on March 2, 1983, for $1,000.00. On or before March 4, 1983, the remainder of the equipment was sold for $5,000.00. Brothers's unpaid debt, including principal and interest, equalled $63,887.12.

Simoney cites *Hall* for the proposition that a number of factors must be considered in determining whether a sale is

terms, but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he

commercially reasonable. However, a close reading of *Hall* reveals that a consideration of the enumerated factors is necessary only where a fair sale price was not received.

Certainly one of the most important factors to be weighed in deciding whether or not a disposition or sale was commercially reasonable will be the price received by the secured party. In cases where a fair sale price was received, the debtor will have suffered no injury and normally will have no complaint (except, perhaps, in cases where the debtor would have been able to find alternate financing and redeem the collateral). In cases where a fair sale price was not received, the other items to be considered will generally be relevant to the extent that they may have prevented a fair price or contributed to an unfair price.

*Id.*, 370 N.E.2d at 929.

■ The evidence that the equipment was sold at more than its appraised value supports the trial court's finding that the sale was commercially reasonable. INB also met its burden of showing the value of the collateral was less than the debt.

## II.

One of Brothers' assets listed by INB's loan officer on February 28, 1983, was a "3 Way Liquor Permit; catering/carryout/Sunday." There is no record as to what happened to the permit.

Simoney asserts Brothers' liquor permit had an unrefuted value of $18,000.00 to $20,000.00 and argues that INB's failure to dispose of the permit with notice to her entitles her to an offset against INB's claim by the value of the permit pursuant to IC 26–1–9–507 (1988).[3]

has not signed, after default, a statement renouncing or modifying his right to notification of sale.

3. A secured party may be held liable under IC 26–1–9–507(1) for *any loss* caused by the failure to comply with the notification requirement of IC 26–1–9–504(3). *Bloomington Nat. Bank v. Goodman Distributing* (1985), Ind.App., 482 N.E. 2d 727, 731–32.

Simoney's argument is without merit. Simoney's basis for the claimed setoff is that the liquor permit was secured collateral. This is incorrect.

The evidence is that INB had a security interest by agreement only in the equipment owned by Brothers. The "listing of collateral" to which she refers is instead, a list of "Items purchased by the Brothers Inc. with proceeds of loan from Indiana National Bank." Record at 272. In any event, a security interest in a liquor permit is not perfectable under Indiana law and is not enforceable against the Indiana Alcoholic Beverage Commission. *Matter of Eagles Nest, Inc.* (1986), N.D.Ind. Bkrtcy., 57 B.R. 337, 340. It is not property within the scope of IC 26-1-9.[4] The trial court did not err in determining Simoney was not entitled to an offset against INB's deficiency judgment.

### III.

Simoney alleges her unconditional guaranty is an unenforceable contract because it is unconscionable and there was a lack of consideration. Simoney claims the guaranty was unconscionable because of unfair bargaining power. *Weaver v. American Oil Co.* (1971), 257 Ind. 458, 276 N.E.2d 144.

Even though there is a disparity in bargaining power between a lender and the guarantor the contract is not unconscionable unless the disparity caused the guarantor to sign the guaranty unwillingly or caused the guarantor to be made unaware of its terms. *Houin v. Bremen State Bank* (1986), Ind.App., 495 N.E.2d 753, 758.

Simoney argues there was unfair bargaining power because there was no negotiation and she was led to believe Brothers had sufficient assets to pay the indebtedness.

The evidence most favorable to INB is that the forms and the terms of the loan and guaranty were explained to Simoney by the loan officer. Thus the evidence is sufficient to support the trial court's determination that "[t]he execution of said Guaranty and mortgage by the Defendant was voluntary and with the knowledge of what she signed and the documents meaning and purpose." Record at 123.

Simoney argues there was no consideration because she received no benefit with respect to the guaranty.

When a suretyship contract is entered along with another agreement, both instruments must be construed together. *Garco Industrial Equipment Co. v. Mallory* (1985), Ind.App., 485 N.E.2d 652. It is not necessary for a guarantor to derive any benefit from the principal contract or the guaranty for consideration to exist. If the guaranty is made at the time of the principal contract sufficient consideration exists. *Id.*

Simoney's guaranty was executed on the same day as the security agreement and the mortgage. The guaranty was given "in consideration of credit given or to be given" to Brothers, Inc. totalling $50,000.00. Record at 219. Brothers received the $50,000.00. Thus there was sufficient consideration for the guaranty.

Judgment affirmed.

SULLIVAN and MILLER, JJ., concur.

---

**4.** The record is devoid of any evidence Simoney had any interest in the permit as a permittee. In any event IC 7.1-3-1-2 (1988) reads:

A permittee shall have no property right in a wholesaler's, retailer's, or dealer's permit of any type.
Neither is there any evidence the permit was transferable under IC 7.1-3-24.