**In the Matter of James J. SCHNEIDER.**

No. 49S00–9603–DI–252.

Supreme Court of Indiana.

April 12, 1999.

Karl L. Mulvaney, Nana Quay–Smith, Bingham Summers Welsh & Spilman, Indianapolis, IN, for the Respondent.

Donald R. Lundberg, Executive Secretary, Dennis K. McKinney, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

### PER CURIAM

James J. Schneider, an attorney admitted to the bar of this state in 1976, has been charged by the Indiana Supreme Court Disciplinary Commission with three counts of professional misconduct, including using misleading letterhead, failing to abide by a client's decision regarding the objectives of representation, and attempting to charge an unreasonable fee. This Court appointed a hearing officer who, after conducting a hearing on the merits, concluded that the respondent engaged in misconduct. This matter is now before us for final resolution. The respondent filed a *Petition for Review* of the hearing officer's report, therein asking us to address several aspects of that report during our *de novo* review of the record in this case. *Matter of Hampton,* 533 N.E.2d 122 (Ind. 1989). He also requested oral argument as to some of the issues presented. We deny that request, and now proceed to our factual findings in this case.

**Count I.** We now find that, in addition to practicing law as "James J. Schneider, Attorney at Law," the respondent is a certified public accountant, practicing as "Schneider & Co., Inc." The respondent's law practice is a sole proprietorship with respondent as the sole employee. In conjunction with both practices, the respondent used letterhead that identified him as an attorney and a certified public accountant. The letterhead denoted his law practice as "Professional Services Group" and listed five additional members, two designated as attorneys and three as CPAs. None were actually employees of the respondent's law practice. The letterhead also proclaimed: "WE HELP YOU CREATE AND PRESERVE WEALTH."

Indiana Professional Conduct Rule 7.2 provides:

(a) A lawyer or law firm shall not use or participate in the use of professional cards, professional announcement cards, office signs, letterheads, telephone directory listings, law lists, legal directory listings, or a similar professional notice or device if it includes a statement or claim that is false, fraudulent, misleading, deceptive, self-laudatory or unfair within the meaning of or that violates the regulations contained in Rule 7.1.[1]

(b) A lawyer shall not practice under a name that is misleading as to the identity, responsibility, or status of those practicing thereunder, or is otherwise false, fraudulent, misleading, deceptive, self-laudatory, or unfair within the meaning of Rule 7.1, or is contrary to law. In that it is inherently misleading, a lawyer in private practice shall not practice under a trade name....

The hearing officer found that the respondent's listing of other attorneys and CPAs on his letterhead, where those persons were not in fact associated with the respondent's law practice, violated Prof.Cond.R. 7.2(a) in that it was deceptive and misleading. She also found that the respondent's use of the descriptor "Professional Services Group" violated Prof.Cond.R. 7.2(b) because it was used in such a way as to be misleading as to the identity, responsibility, and status of persons who did work for the respondent's law practice.

---

1. Professional Conduct Rule 7.1(c) provides that false, fraudulent, misleading, deceptive, self-laudatory or unfair statements include statements which, *inter alia,* are intended or are likely to create an unjustified expectation.

■ The respondent's use of one letterhead for both his law and accounting practices, which letterhead included attorneys and other professionals not employed by the law practice, would understandably create confusion regarding the identity and responsibility of those practicing law or performing services in support of the law practice. It leaves the impression that those listed are associated with the law practice, when in fact they are not. Similarly, the identifier "Professional Services Group" is misleading to the public and potential clients. "There is no doubt that the use of a trade name is inherently misleading, particularly as to the responsibility over employees and the duty owed by the lawyers." *Matter of Sekerez*, 458 N.E.2d 229 (Ind.1984). In this case, the respondent held himself out as part of a group including other attorneys, although his law practice had no employees other than himself. Referring to his practice as part of a group created a false impression that the other attorneys were associated with respondent in the practice of law.

The respondent argues that the letterhead and trade name accurately reflect the dual nature of his practice and therefore is not misleading. Even though the respondent provided both legal and accounting services, he did not practice law as part of a legal entity comprised of the persons listed on his letterhead. He testified that he practices law as a sole proprietor, with no employees. There was no "group," only the respondent. Thus, the fact that the respondent practiced law and provided accounting/financial services does not relieve him of his obligation not to mislead the public with regard to with whom he practices law. We recognize that it may be permissible on letterhead to identify oneself as a lawyer/CPA, as long as the letterhead is not otherwise misleading. The respondent's was, and we therefore agree with the hearing officer's conclusion that his use of it violated Prof.Cond.R. 7.2.

■ The respondent's use of the statement "WE HELP YOU CREATE AND PRESERVE WEALTH" suffers from similar problems. It predicts an outcome—that hiring the respondent will result in a favorable economic result for clients. It also sug-

gests, through the use of the word "we," that the respondent and all those listed on the letterhead will team up and work together to achieve the result. As we noted above, such an assertion is misleading. We have ruled that an attorney's advertisement offering "the track record and resources you need to win a settlement" created an unjustified expectation that similar results could be obtained in every claim. *Matter of Anonymous*, 689 N.E.2d 442 (Ind.1997). Similarly, the statement on the respondent's letterhead implies a collective ability to create and preserve wealth in all cases. As such, it threatens to create "unjustified expectations" and is thus misleading under Prof.Cond.R. 7.2(a).

■ The respondent argues that his use of the statement was not specifically charged by the Commission and therefore is not a proper basis for disciplinary action. Although the statement itself is not specifically recounted in the verified complaint, the complaint refers to the respondent's use of "letterhead that is misleading and likely to create an unjustified expectation regarding the Respondent's services." Further, the letterhead containing the statement was offered in evidence by both parties during hearing of this matter. In disciplinary proceedings, due process requires notice of the charges and an opportunity to be heard. *Matter of Roberts*, 442 N.E.2d 986, 988 (Ind.1983). We find that the respondent was provided sufficient notice that the content of his letterhead, including the wealth-preservation statement, was at issue so as to provide him with sufficient opportunity to respond to the charges.

**Count II.** In January 1995, a client hired the respondent to assist in the collection of a principal $5,000 debt owed to the client. The money had been loaned for the purpose of providing funds for a corporation and was memorialized by a written agreement. The client entered into an agreement for the respondent to handle the collection matter on an hourly basis. On February 9, 1995, the respondent sent a letter to the client outlining the services he would perform along with a fee agreement providing that the client agreed to pay a carrying charge on any balance unpaid after 30 days, and to pay collection costs resulting from any disagree-

ment, litigation or time spent involving the respondent and his services. The proposed fee agreement also provided:

> our fee for services rendered may be determined to be a percentage of the hourly based charges ... from 70 to 300% of hourly charges but can be lower or much higher if we deem it appropriate.

On March 6, 1995, the client signed and returned the engagement letter and fee agreement. By May 15, 1995, the respondent had billed the client $583, yet the respondent had initiated no contact with the debtor. The client informed the respondent that he would not pay the amount and that he wished to terminate the representation. After receiving the discharge letter, the respondent returned a letter which demanded payment of the outstanding bill. The reply and demand letter generated an additional $360 charge to the client.

■ Indiana Professional Conduct Rule 1.5(a) provides that a lawyer's fee shall be reasonable. Factors to be considered when assessing the reasonableness of a fee include (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or other circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. *Id.*

■ The respondent's fee was unreasonable. The respondent charged his client $360 for generating a demand letter to collect his own disputed fee. The respondent had obtained no results for his client—the hearing officer found that the initial bill for $583 appeared before the respondent had

even contacted the debtor. Although it is, of course, not necessary for a lawyer to obtain the client's desired outcome in order to be paid for services, a lawyer should take some logical, tangible, substantive step toward resolution of the client's problem, especially regarding a relatively simple matter such as collection of a memorialized debt. The respondent billed the client $943 for writing two letters to him: one outlining the procedure that might be employed in collecting the debt (and supporting the initial charged fee of $583), the second demanding payment of the bill incurred for the preparation of the first letter. That the respondent never got around to making a bona fide attempt actually to collect the debt (i.e., contacting the debtor) reflects the unreasonable nature of charging the $943 fee. We therefore find that the respondent attempted to exact from his client an unreasonable fee, both before and after his termination from representation, in violation of Prof.Cond.R. 1.5(a).

**Count III.** On June 24, 1994, a client contacted the respondent regarding a tax matter. The client subsequently met briefly with the respondent and another purported member of the respondent's "Group" on June 28, 1994. At that time they discussed the client's tax problem. Bankruptcy was suggested as a possible remedy. Upon leaving the June 28 meeting, the client signed a fee agreement containing language clearly anticipating work yet to be done. Another attorney [2] did substantial research based upon the questions raised by the client during the June 28 meeting. On July 27, 1994, yet another individual listed on the respondent's letterhead contacted the client and asked him to come in to review his tax issues. The client declined, requested the written answers to at least some of the questions he posed at the June 28 meeting, and requested a bill for services rendered. The respondent sent a letter on July 29, 1994, which addressed the bankruptcy issues. The next day, the respondent billed the client $2,580. The underlying statement indicated the fee was for the preparation of a memorandum listing various legal alternatives for solving

---

2. This attorney was one listed on the respondent's letterhead as a member of the Professional Services Group.

the client's tax problems. These alternatives were not shared with the client in the July 29 letter. On August 8, 1994, the client refused to pay the $2,580, reasoning that he had not received the benefit of the work for which he had been billed. On August 31, 1994, the respondent sent a letter to the client responding to his refusal to pay, along with an additional billing of $432 for the preparation of the reply letter and demand for payment.

■ As with Count II, billing the client, after representation has been terminated, for responding to the client's refusal to pay and demanding payment is an attempt to exact an unreasonable fee. Additionally, billing the client for work done, but not provided to the client, is also an attempt to exact an unreasonable fee because the client received no tangible benefit despite the respondent's investment of time and resources toward the effort. Accordingly, we find that the respondent violated Prof.Cond.R. 1.5(a) by attempting to charge his client over $400 for writing a letter demanding payment of a legal bill, and for charging the client for work product that was not shared with the client.

■ Having concluded that respondent engaged in misconduct, we must now determine an appropriate discipline for it. The respondent urges that a private reprimand is appropriate. In mitigation, we note that the respondent ceased use of the offending letterhead prior to these disciplinary proceedings. The fact remains, however, that the message he supplied to the public was calculatingly misleading. Such communications make informed selection of a lawyer by consumers impossible and opens the door for overreaching. *Matter of Anonymous,* 689 N.E.2d 442. Perhaps even more disturbing are the respondent's heavy-handed billing practices where clients, even after they had fired the respondent, were billed excessive amounts for the preparation of letters demanding payment of fees. We have stated that charging excessive fees is a serious matter:

> [W]hether or not the fee charged is excessive is a question of public import; it has an impact on the availability of legal services to the public, the administration of justice, and, ultimately, reflects on the at-

torney's professional status. Excessive cost of legal service deters the public from using the legal system in the protection of rights. *Matter of Gerard,* 634 N.E.2d 51 (Ind.1994) (citation omitted).

The respondent's billing of his clients for legal work done, but not shared with the clients, is equally distressing. In this case, his withholding of the work product completely divested his client of any benefit from the respondent's efforts. In order to demonstrate to the respondent and the bar that letterhead and billing practices such as utilized by the respondent are wholly inappropriate, we conclude that a suspension from the practice of law is warranted.

Accordingly, the respondent, James L. Schneider, is hereby suspended from the practice of law for a period of thirty (30) days, beginning May 17, 1999, at the conclusion of which he shall be automatically reinstated.

The clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerks of the United States Bankruptcy Courts in this state with the last known address of the respondent as reflected in the records of the clerk.

Costs of this proceeding are assessed against the respondent.

SHEPARD, C.J., and SULLIVAN, SELBY, and BOEHM, JJ., concur.

DICKSON, J., dissents, believing the penalty insufficient.