Kenneth H. COLE, Appellant–Defendant,

v.

LOMAN & GRAY, INC.,
Appellee–Plaintiff.

No. 49A04–9809–CV–460.

Court of Appeals of Indiana.

July 9, 1999.

---

David E. Wright, Garlan L. Adams, Johnson, Smith, Pence, Densborn, Wright & Heath, LLP, Indianapolis, Indiana, Attorney for Appellant.

R. Brock Jordan, Rubin & Levin, P.C., Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

GARRARD, Judge

### Case Summary

This action concerns default on a promissory note executed by Neighbors Restaurant and Pub, Inc. ("Neighbors") in favor of Loman and Gray, Inc. ("Loman & Gray") and guaranteed by Vincent and Janis O'Mara and Kenneth Cole. Loman & Gray filed a motion for summary judgment against Cole which the trial court granted. Cole appeals and we reverse and remand with instructions.

### Issues

Whether the trial court erred in granting summary judgment in favor of Loman & Gray.

### Facts and Procedural History

In 1993, Loman & Gray owned a restaurant known as Harry C's in Greenwood, Indiana. Loman & Gray entered into a contract with another restaurant, Neighbors, by which Neighbors was to purchase all of the assets of Harry C's. According to the contract for sale, the purchase price was $160,000.00, with $60,000 to be paid immediately and the remaining $100,000.00 to be paid, with interest, over a ten year period.

On behalf of Neighbors, Vincent and Janice O'Mara and Kenneth Cole executed an installment promissory note and loan guaranty agreement in the amount of $100,000.00. The loan was secured by a security agreement granting Loman & Gray a security interest in "all of the business assets of Loman & Gray, Inc. d/b/a/ Harry C's Greenwood." Record at 147. Pursuant to the terms of the security agreement, upon default by Neighbors under the terms of the note, Loman & Gray was authorized to take possession of the collateral and sell it at a public sale. Loman & Gray subsequently instructed its attorney[1] to file a financing statement with the Secretary of State's office in order to perfect the security interest. However, the attorney failed to file the statement and the security interest remained unperfected.

After making twenty-three monthly installment payments, Neighbors defaulted on the note and filed for bankruptcy protection. The bankruptcy court, after conducting a UCC filing search, sold Harry C's business assets for $27,737.50. Loman & Gray filed suit against the O'Maras and Cole and obtained summary judgment against the O'Maras. Loman & Gray then moved for summary judgment against Cole. After a hearing, the trial court entered summary judgment in favor of Loman & Gray and ordered Cole to pay Loman & Gray the sum of $59,942.64, plus interest and attorney's fees. The sum reflects the amount due on the note less the amount made from the auction of the assets. Cole appeals.

### Discussion and Decision

#### I. Summary Judgment

When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court. We may consider only those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for the purposes of the motion for summary judgment. Ind. Trial Rule 56(C); *Chicago Southshore & S.B. R.R. v. Itel Rail,* 658 N.E.2d 624, 629 (Ind. Ct.App.1995). We may not reverse a grant of summary judgment on grounds that there is a genuine issue of material fact unless the material fact was specifically designated to the court. *Rosi v. Business Furniture Corp.,* 615 N.E.2d 431, 434 (Ind.1993). The appellant bears the burden of proving that the trial court erred in determining there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe by Cowe v. Forum Group. Inc.,* 575 N.E.2d 630, 633 (Ind.1991).

---

1. At the Time, Loman & Gray was represented by     different counsel.

Cole contends that summary judgment was inappropriate because Loman & Gray's failure to perfect the security interest constituted an impairment of the collateral, thus precluding Loman & Gray's recovery against him. In Indiana, the guarantor of a debt may seek to avoid personal liability in a suit by a creditor by asserting the impairment of collateral defense. *Farmers Loan & Trust Co. v. Letsinger*, 652 N.E.2d 63, 66 (Ind.1995).[2] Pursuant to this defense, the guarantor's liability will be discharged if the facts establish that the creditor's conduct unjustifiably impaired the collateral securing the debt. *See Wisconics Engineering, Inc. v. Fisher*, 466 N.E.2d 745, 767 (Ind.Ct.App. 1984), *trans. denied.* Impairment of collateral has been defined as both injury to the value of the collateral and deterioration of the interest securing the collateral, *White v. Household Finance Corp.*, 158 Ind.App. 394, 302 N.E.2d 828, 835 (1973), and as "unreasonable acts which make the collateral unavailable to the surety and increase his risk." *Wisconics*, 466 N.E.2d at 767.

In *Letsinger*, our supreme court affirmed a trial court's decision to deny a bank recovery on a promissory note on which the Letsingers defaulted where the bank failed to file a refinancing statement or a continuation statement perfecting a security interest. The court held that, by failing to perfect the security interest, the bank exposed the Letsingers to personal liability for which they did not contract. *Letsinger, 652 N.E.2d.* at 67. In discussing the reasons for the impairment of collateral defense, the *Letsinger* court stated:

> That a guarantor may interpose the defense that a creditor impaired the collateral makes sense for two reasons. First, the guarantor at the time of making the guaranty may make the judgment that the collateral for the loan to the guarantor's principal will be sufficient to cover the debt. If the creditor impairs the collateral, and the guarantor has not consented to release or other impairment of the collateral, the guarantor may become exposed to liability beyond the guarantor's expectation at the time the parties entered into the contract.
>
> . . . .
>
> Second, a guarantor who satisfies the principal debtor's obligation to the creditor usually steps into the shoes of the creditor, becoming subrogated to the creditor's claim and assuming both the creditor's rights and duties. Thus, when a creditor unjustifiably impairs the collateral securing a guaranteed loan, it impairs the guarantor's recourse against the guarantor's principal, which recourse the guarantor would have understood itself to have at the time of contracting to guaranty the principal's debt.

*Id.* at 66–67 (citations omitted).

In *White v. Household Finance Corp.*, 158 Ind.App. 394, 302 N.E.2d 828 (1973), this court held that a failure to execute a security agreement in collateral constitutes an impairment of the collateral pursuant to Indiana Code Section 26–1–3–606. The court stated: "When a creditor releases or negligently fails to protect the security put in his possession by the principal debtor, the surety is released to the extent of the value of the security so impaired." *White*, 302 N.E.2d at 833.

Based on the foregoing, we conclude that Loman & Gray's failure to perfect the security interest constituted an impairment of the collateral. This result may seem harsh in light of the fact that Loman & Gray's attorney failed to perfect the security interest despite Loman & Gray instructing him several times to do so. However, Cole is entitled, under Indiana law, to have the collateral protected and to avoid incurring more liability under the promissory note than he agreed to assume when he contracted to guarantee the debt. On the other hand, Loman & Gray is bound by the actions, or inactions, of its

---

2. We reject Loman & Gray's contention that Cole consented to impairment of the collateral or waived his right to this defense. Our supreme court has stated that "an unconditional guaranty is, by itself, insufficient to waive the impairment of collateral defense." *Farmers Loan & Trust Co. v. Letsinger*, 652 N.E.2d 63, 67 n. 3 (Ind.1995). In the instant case, neither the promissory note nor the security agreement contains a waiver or consent provision. Therefore, Cole is entitled to raise an impairment defense.

attorney as its agent. Thus, we conclude as a matter of law that Loman & Gray impaired the collateral. The only issue remaining, therefore, is the amount of the impairment.

With regard to the amount of impairment, Cole urges us to adopt the theory of *strictissimi juris*. Under this doctrine, a surety is completely discharged of any liability under the promissory note where the collateral was impaired whether or not the surety has sustained loss or prejudice as a result of the impairment. *See Langeveld v. L.R.Z.H. Corp.*, 74 N.J. 45, 376 A.2d 931, 937 (1977). Generally, this doctrine applies in situations where the facts disclose that there was prejudice to the surety, but where the impairment of the collateral cannot be measured in monetary terms. *Rempa v. LaPorte Production Credit Ass'n*, 444 N.E.2d 308, 313 n. 4 (Ind.Ct.App.1983). In the instant case, the collateral in question consisted primarily of tangible, physical assets; specifically, the "furniture, fixtures, equipment, merchandise, alcoholic beverage permit,[3] goodwill and records" of Neighbors, which are conducive to monetary valuation.

In *Letsinger*, our supreme court stated that "when a creditor unjustifiably impairs collateral securing a debt, independent, absolute, continuing guarantors of that debt should be discharged to the extent that the creditor has impaired the collateral." *Letsinger*, 652 N.E.2d at 64. The amount of impairment is measured as of the time of the default and the burden of proof is on the

party seeking to be discharged to establish the amount of the loss. *Rempa*, 444 N.E.2d at 313–14. Our decisions have taken a pro tanto approach in cases considering impairment of collateral. It appears that the approach would work fairly in the present case. Accordingly, we decline to adopt the doctrine of *strictissimi juris*.

The record here reveals that the parties dispute the value of this collateral at the time of contracting. Cole contends that the collateral was worth approximately $130,000—$140,000 at the time that the parties formed the security agreement. Loman & Gray, however, disputes this amount and contends that the amount of impairment should be based solely on the amount received in the auction sale of the assets. Because there is a genuine issue of material fact as to the value of the collateral at the time of contracting, and the amount of impairment as of the time of default, we remand this case for the trial court to determine, based on evidence presented by both parties, the value of the collateral at the time of contracting and the amount of impairment.[4]

Reversed and remanded.

KIRSCH, J. and NAJAM, J. concur.

3. The parties dispute the value of the alcoholic beverage permit and whether the permit should be considered when valuing the amount of impairment. We note that, under Indiana law, a security interest cannot be perfected in an alcoholic beverage permit. *In the Matter of Eagles Nest, Inc.*, 57 B.R. 337, 340 (Bankr.N.D.Ind. 1986). Generally, the holder of an alcoholic beverage permit may not sell, assign, or transfer that permit to another. IND.CODE § 7.1-3-24-1. Therefore, in the case of default where a security interest was presumably created in a liquor license, the "bankruptcy estate takes the license free and clear of any security interest, since a security interest is not perfectible under Indiana law and would not be enforceable against the Indiana Alcoholic Beverage Commission." *Eagles Nest*, 57 B.R. at 340.

4. With respect to attorney's fees, the security agreement between the parties provides that the

debtor "promises to pay with interest as provided in any instrument evidencing an obligation, ... all without relief from valuation and appraisement laws and *with reasonable attorney's fees* and all costs of collection." Record at 147 (emphasis added). The promissory note also provides for attorney's fees. Record at 145. Thus, the trial court may award Loman & Gray attorney's fees. We have also allowed appellate attorney's fees on equitable principles where a contract provision intended to indemnify the injured party. *Seibert*, 510 N.E.2d at 1378. Thus, Loman & Gray may also be entitled to additional, appellate attorney fees. The preferred procedure is for the trial court to hear evidence and determine a reasonable fee when the appeal has concluded. *Radio Distributing v. National Bank & Trust*, 489 N.E.2d 642, 649 (Ind.Ct.App.1986).