**In re Richard Clyde BARNES, Debtor.**

**Thomas J. VanKirk, Plaintiff,**

v.

**R. David Boyer, Trustee Yvette Kleven, Successor Trustee John W. Carroll M. Charlene Carroll Denelle Mary Barbaro, Defendants.**

**Bankruptcy No. 99–11727.
Adversary No. 99–1153.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

Nov. 2, 2000.

Ward Miller, Fort Wayne, IN, for Plaintiff.

Martin E. Seifert, Fort Wayne, IN, for John W. Carroll and M. Charlene Carroll.

Kim Spielman, Fort Wayne, IN, for Denelle Mary Barbaro.

R. David Boyer II, Fort Wayne, IN, for Trustee R. David Boyer.

Yvette Gaff Kleven, Fort Wayne, IN, for Trustee Yvette Kleven.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

By this adversary proceeding, Plaintiff seeks a determination of the rights of the parties in a three-way alcoholic beverage permit (hereinafter "the Permit") issued by the State of Indiana. At the heart of the dispute is the question of whether Indiana law allows liens to attach to these permits. The matter has been submitted to the court for decision upon the parties' stipulations of fact and the briefs of counsel.

*Facts*

The Permit was held in the name of J.R., Inc. until August 18, 1998 when the Indiana Alcoholic Beverage Commission authorized its transfer to Richard Barnes (hereinafter "Barnes") and Marg Hooker (hereinafter "Hooker"). It was periodically renewed and stood in their individual names on June 25, 1999 when they each filed separate petitions for relief under the Bankruptcy Code.[1]

The Plaintiff, Thomas VanKirk, was an employee of J.R., Inc. from September 2, 1997, through February 13, 1998. In order to collect his unpaid wages, on February 17, 1998 he filed a notice of employee's lien with the Allen County Recorder as to the property owned by J.R., Inc. *See* I.C. 32–8–24–2. He also filed a financing statement with the Indiana Secretary of State. In April of 1998, Plaintiff filed suit to foreclose his employee's lien. The Allen Superior Court entered judgment in his favor, by default on April 23, 1999, foreclosing the lien "as to any and all assets of the corporation JR, [sic] Inc. on and after September 2, 1997."[2] On May 12, 1999, Plaintiff filed a motion for the appointment of a receiver, asking that the Permit be administered for the benefit of creditors. The Allen Superior Court held the motion in abeyance pending the disposition of an identical motion before the Allen Circuit Court. Neither court appointed a receiver before Barnes and Hooker filed their respective bankruptcy petitions. Plaintiff claims a lien on the Permit pursuant to I.C. 32–8–24–1, *et seq.*

On February 5, 1998, Defendants John W. Carroll and M. Sharlene Carroll, (hereinafter "the Carrolls"), loaned the debtors seventy-five thousand dollars ($75,000). The loan proceeds were used to pay delinquent taxes J.R., Inc. owed to the State of Indiana. This was done to allow the transfer of the Permit into the debtors' individual names.[3] To secure the loan, Barnes & Hooker, Inc. granted the Carrolls a security interest in "the liquor license in the name of Barnes & Hooker, Inc."[4] The Carrolls filed a financing statement reflecting this security interest on August 20, 1998. They claim they were led to believe that they were being granted a lien upon the three-way permit at issue here. They also argue that their loan to Barnes and Hooker increased the value of the Permit. These facts lead them to claim an equitable lien upon it. They contend that their financing statement, albeit with regard to a different permit, gave interested parties constructive notice of this equitable interest.

Denelle Barbaro (hereinafter "Barbaro") claims to be without knowledge of the lien claims of herself and others. However, she too filed a financing statement, on January 30, 1997, with the Indiana Secretary of State. This financing statement identifies her as the secured party and J.R., Inc. as the debtor and refers to a security interest in "the operating equipment of [J.R., Inc.] located at [J.R., Inc.'s]

---

1. Richard Barnes filed for bankruptcy (Case # 99–11727) under Chapter 13 on June 25, 1999. His case was voluntarily converted to Chapter 7 on August 10, 1999. Margy Hooker filed for bankruptcy under Chapter 13 (Case # 99–11726) on June 25, 1999. Her case was voluntarily converted to Chapter 7 on January 11, 2000.

2. The state court did not identify the property subject to Plaintiff's lien with any greater specificity than this; nor did it determine whether he held a lien upon the Permit. (Pl's.Compl.Ex. A). Had it done so, the principles of res judicata would seem to prevent this court from revisiting the question.

3. The State of Indiana had previously denied renewal of the Permit and would not authorize its transfer unless all outstanding tax obligations of the permittee-transferor were completely satisfied.

4. Barnes & Hooker, Inc. is a separate corporation owned by the debtors. It also held a liquor permit issued by the State of Indiana. That permit, however, was only a two-way, beer and wine license and is not the one at issue here.

address." In the proceedings before the Allen Superior Court, Barbaro stipulated that her security interest did not extend to the Permit. This stipulation, together with the fact that she has not submitted a brief directed to the issue, leads the court to conclude that she is not advancing any claim to a lien in this court.

The other defendants, R. David Boyer and Yvette Kleven, are the trustees of the respective bankruptcy estates of Barnes and Hooker.

### Analysis

■ It is not (and cannot be) disputed that, as a matter of federal law, the Permit is property of the two bankruptcy estates. *See* 11 U.S.C. § 541(a). The issue before the court, however, is whether the estates' interests are encumbered by a lien in favor of any of the other parties to this proceeding. This issue is a question of state law. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

■ At the heart of the parties' dispute is the question of whether Indiana law allows a lien to be placed upon an alcoholic beverage permit. The bankruptcy court in this district first addressed the issue in 1986, when Judge Rodibaugh decided *In re Eagles Nest, Inc.*, 57 B.R. 337 (Bankr. N.D.Ind.1986). Noting that there was "virtually no Indiana case law in this area," *id.* at 340, he was confronted with an issue of first impression. After surveying the language of the statute and the authority that was available (from both Indiana and elsewhere), Judge Rodibaugh concluded that "it is impossible to create an enforceable security interest in an alcoholic beverage permit in Indiana...." *Id.* at 340.

Three years later, the issue again reared its head in *Official Unsecured Creditors' Comm. v. Northern Indiana Liquor Sys., Inc. (In re Northern Indiana Liquor Sys., Inc.)*, Case No. 87–30052, Adv. No. 88–3177 (Bankr.N.D. Ind. June 29, 1989). There, Judge Dees also observed that he too was "[w]ithout ... guidance from the Indiana legislature or the Indiana courts ...." *Id.* at 25. After surveying the language of the statute and the authority that was available (from both Indiana and elsewhere), he came to the conclusion that a liquor license was property within the meaning of Article 9 of the Uniform Commercial Code and, thus, could be subject to a security interest.

Happily, the present author does not have to choose between the opposing views adopted by his colleagues. In the years since they grappled with the issue, the Indiana Court of Appeals has issued two separate decisions dealing with liens upon liquor licenses. *See Cole v. Loman & Gray, Inc.*, 713 N.E.2d 901 (Ind.App.1999); *Vanek v. Indiana Natl. Bank*, 540 N.E.2d 81 (Ind.App.1989). Those decisions supply the authority that was previously lacking and both of them support the conclusion that Indiana law does not allow a lien to be placed upon an alcoholic beverage permit.

In the first of these decisions, *Vanek*, 540 N.E.2d 81, a bank sought a deficiency judgment against a guarantor (Simoney) following the disposition of the loan's collateral. The guarantor defended, arguing that the bank had failed to dispose of a liquor permit, with the result that any deficiency should be reduced by the permit's value. *Id.* at 83. The appellate court found no merit in this argument.

> Simoney's basis for the claimed setoff is that the liquor permit was secured collateral. This is incorrect.
>
> The evidence is that [the bank] had a security interest by agreement only in the equipment owned by Brothers....
> In any event, a security interest in a liquor permit is not perfectible under Indiana law and is not enforceable against the Indiana Alcoholic Beverage Commission. *Matter of Eagles Nest, Inc.* (1986), N.D. Ind. Bkrtcy., 57 B.R. 337, 340. It is not property within the scope of [Article 9 of the Uniform Commercial Code].

*Vanek*, 540 N.E.2d at 84.

In *Cole*, 713 N.E.2d 901, the Indiana Court of Appeals again confronted the ar-

gument that the rights of a guarantor had been impaired, this time because the secured party had failed to perfect its lien. The court concluded that such a failure constituted impairment, with the result that the guarantor was "released to the extent of the value of the security so impaired." *Id.* at 904. In addressing the parties' dispute concerning the amount of the resulting impairment and, in particular, how a liquor permit that was specifically included as collateral should be valued, the court stated:

> The parties dispute the value of the alcoholic beverage permit and whether the permit should be considered when valuing the amount of impairment. We note that, under Indiana law, a security interest cannot be perfected in an alcoholic beverage permit. *In the Matter of Eagles Nest, Inc.,* 57 B.R. 337, 340 (Bankr.N.D.Ind.1986).... Therefore, in the case of default where a security interest was presumably created in a liquor license, the "bankruptcy estate takes the license free and clear of any security interest...." *Eagles Nest,* 57 B.R. at 340.

*Cole,* 713 N.E.2d at 905 n. 3

■ In the years since a member of this court last had the occasion to address the issue of whether Indiana law allows the creation of liens upon liquor licenses, the Indiana Court of Appeals has done so twice. In each instance, it was free to reject *Eagles Nest* and its conclusion that Indiana law does not permit them. It did not do so. Instead, the Court of Appeals decided that a liquor license is not property within the scope of Article 9 of the UCC and that it cannot be the object of a security interest. Since the question has not been addressed by the state's highest court, this may not be the final word on the subject. Nonetheless, when a federal court is called upon to decide an issue of state law, two decisions from the state's intermediate court, which speak directly to the matter at hand, are highly persuasive and should not be disregarded without a compelling reason. *See Allen v. Transamerica Ins. Co.,* 128 F.3d 462, 466 (7th Cir.1997)(decisions of [intermediate appellate] courts control unless there are persuasive indications that the [state supreme court] would decide the issue differently); *Staten v. Neal,* 880 F.2d 962, 964 (7th Cir.1989)(when the state's highest court has not ruled on an issue of state law, the federal courts must determine the matter after giving "proper regard" to rulings by the state's lower courts). *See also Hartford Accident and Indemnity Ins. Co. v. Washington Natl. Ins. Co.,* 638 F.Supp. 78, 81 (N.D.Ill.1986)(federal courts should not disregard uniform state appellate court results absent persuasive data that the highest court would decide otherwise)(citing *West v. American Telephone and Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)).

■ There is no compelling reason not to follow *Cole* and *Vanek.* Quite to the contrary, those decisions appear to be consistent not only with the underlying statutes concerning liquor permits, but also with other Indiana decisions concerning them. A permit to sell alcoholic beverages "'is strictly a creature of statute, and the rights of the permittee are such, and such only, as the statute gives.'" *State ex rel. Pollard v. Superior Court of Marion County,* 233 Ind. 667, 122 N.E.2d 612, 615 (1954)(quoting *State ex rel. Indiana Alcoholic Beverage Comm. v. Superior Court of Marion County,* 233 Ind. 563, 122 N.E.2d 9 (1954)). Indiana's statutes specifically declare that the holder of a liquor license "shall have no property right in a wholesaler's, retailer's, or dealer's permit of any type." I.C. 7.1–3–1–2. Based upon statutory declarations of this type, "[n]o rule in Indiana is better established than that a license to sell intoxicating liquors is neither a contract nor a property right." *Pollard,* 122 N.E.2d at 616. *See also State ex rel. Harris v. Superior Court of Marion County,* 245 Ind. 339, 197 N.E.2d 634, 640 (1964); *Dagley v. Inc. Town of Fairview,* 175 Ind.App. 379, 371 N.E.2d 1338, 1341

(1978); *Selle v. Short,* 164 Ind.App. 6, 326 N.E.2d 610, 613 (1975); *King v. Harris,* 140 Ind.App. 9, 212 N.E.2d 387, 391 (1965).

The only decision from the Indiana courts that attempted to erode this well established principle is *Lake County Beverage Co., Inc. v. 21st Amendment, Inc.,* 441 N.E.2d 1008, 1011 (1982), where the court of appeals concluded that "a permit holder has a recognizable interest in the use of his liquor permit." *Id.* Indeed, *Northern Indiana Liquor Systems* relied heavily on this Indiana decision in reaching the conclusion that a liquor license could be the object of a security interest. *See Northern Indiana Liquor Systems,* at 10–11, 27. The Indiana Supreme Court has, however, observed that *Lake County Beverage* was wrongly decided. In *Ridenour v. Furness,* it stated:

> The majority in *Lake County Beverage Co.* took the position that the legislature had deleted this language [declaring that there was no property right in a permit] from the statute, therefore, giving rise to a presumption that the legislature intended to change the law. They reasoned the legislature had established a property right in the license. However, the majority apparently overlooked a statute that was passed in 1973, I.C. 7.1–3–1–2, which states: "A permittee shall have no property right in a wholesaler's, retailer's or dealer's permit of any type." Thus, the legislature had reenacted its statement in the 1945 statute, which the Court of Appeals in *Lake County Beverage Co.* found to have been deleted. We thus hold that *Lake County Beverage.Co.* is of no force in this case. . . .

*Ridenour v. Furness,* 514 N.E.2d 273, 275 (Ind.1987).

In the face of Indiana's statutory and decisional authority which declares that a liquor license is not property, Plaintiff argues that this court should look to the policy behind the employee's lien upon corporate property. He also notes that a permit has many of the hallmarks of property—it has significant value, is transfer-able, and the permittee's business may be operated by its guardian, personal representative, or receiver—and that it is property for the purposes of both § 541(a) and the Due Process Clause. *See Midwest Beverage Co. v. Gates,* 61 F.Supp. 688, 691 (N.D.Ind.1945)(the use of a permit, if not the permit itself, is property within the meaning of the Due Process Clause). Based upon these considerations, he urges the court to conclude that a liquor license is property for the purposes of I.C. 32–8–24–1, *et seq.*

The policies and other considerations Plaintiff focuses upon do not create the cognitive dissonance for the court that he seems to suggest should be present. The Indiana legislature has decreed that: "A permittee shall have no property right in a . . . permit of any type." I.C. 7.1–3–1–2. It has also created mechanisms which allow parties to "create a security interest in personal property," I.C. 26–1–9–102(1)(a), and for employees to obtain a lien upon "the corporate property of a corporation." I.C. 32–8–24–1(a)(1). Since the words used in statutes should be given their common meaning, I.C. 1–1–4–1(1), presumably the legislature used the word "property" in much the same way in each of these three statutes. The Indiana Court of Appeals has effectively said as much, through its conclusion that a liquor license is not property for the purposes of Article 9 of the UCC. *Vanek,* 540 N.E.2d at 84. If a liquor license is not "property" as that word is used in Article 9, there is no reason to give the word "property" a different meaning for the purposes of an employee's lien. Indeed, the employee's lien statute itself seems to lead to this conclusion when it establishes the priority of the employee's lien upon "corporate property," I.C. 32–8–24–2(2)(a), in relation to liens acquired by any other person upon "corporate property," I.C. 32–8–24–2(b)(1), and, in doing so, makes a specific reference to Article 9. I.C. 32–8–24–2(b)(2)(A).

The hallmarks of property that Plaintiff points to do not persuade the court that it

should give a different meaning to the word. Most of them, whether it is the due process procedures associated with the revocation or suspension of a permit and the opportunity for judicial review, the permit's transferability, or the operation of the permittee's business by its guardian, personal representative or receiver, are specifically granted by the same statute that governs the permits themselves. *See* I.C. 7.1–3–23–6, *et seq.;* I.C. 7.1–3–24–3, *et seq.* Consequently, their presence is entirely consistent with the principle that "the rights of the permittee are such, *and such only,* as the statute gives." *Pollard,* 122 N.E.2d at 615(emphasis added). Those rights do not include a property right to which a lien can attach.

■ Neither does the fact that an alcoholic beverage permit is "property" for the purposes of § 541(a), so that it becomes property of the bankruptcy estate, give the court reason to pause. *See* 11 U.S.C. § 541(a)(1). Admittedly, property interests are created and defined by state law and, generally, are not analyzed any differently simply because someone is involved in a bankruptcy proceeding. *Butner,* 440 U.S. at 55, 99 S.Ct. at 918. Nonetheless, this general rule is subject to an important proviso: "Unless some federal interest requires a different result...." *Id. See also In re Dow Corning Corp.,* 192 B.R. 428, 440–441 (Bankr.E.D.Mich.1996). Liquor licenses have, as Plaintiff acknowledges, significant value. Given the alternatives between declaring them to be property for the purposes of § 541(a), so that they become part of the bankruptcy estate, or relying upon state law which says that they are not, with the result being that something of significant value would either evaporate or remain with the debtor, the federal bankruptcy interest in paying creditors justifies analyzing them differently.

■ The fact that liquor licenses have value and are considered property within the meaning of the Due Process Clause does not trouble the court either. The argument fails to fully appreciate the fact that the manufacture and distribution of alcoholic beverages is a highly regulated undertaking, which the states may properly restrict in ways that they could not limit other endeavors. *See, e.g., Bridenbaugh v. Freeman–Wilson,* 227 F.3d 848 (7th Cir. 2000) (The 21st Amendment allows states to control the importation of alcoholic beverages in ways the Commerce Clause would forbid.). More importantly, it also fails to recognize that what is or is not property for the purposes of the Due Process Clause represents a continuum. This continuum includes things that are property in every sense of the word and fully subject to its protection. It also includes things that are not property in the traditional sense of the word and, yet, are subject to its protection, and still other things that may fulfill almost any definition of property, but, remain outside its scope. For example, drivers and professional licenses are not property in the traditional sense of the word and they are not transferable; so no one would suggest that they have intrinsic value or are lienable. Nonetheless, they are subject to the protection of the Due Process Clause. *See Heying v. State,* 515 N.E.2d 1125 (1987)(licensee has due process right in driver's license); *In re Schneider,* 710 N.E.2d 178 (Ind.1999)(in attorney disciplinary proceeding, due process applies requiring notice of charges and opportunity to be heard). As for things that are both highly valuable and (unfortunately) readily transferable, but not protected by the Due Process Clause—the sale and possession of cocaine comes to mind—that substance clearly meets the legal definition of tangible personal property; yet, only the most extreme libertarian would suggest treating it as capable of being the object of a lien. Liquor licenses represent a hybrid between these two examples. They share characteristics of both. Like cocaine, they are valuable; they are also (within limits) transferable, whereas other licenses are not. Yet, like those other licenses, they are not property in the traditional sense of

the word, although they are treated like property for the purposes of the Due Process Clause. *See, e.g., Midwest Beverage Co.,* 61 F.Supp. at 688.

Under Indiana law, liquor licenses are not property which can be subject to a security interest created pursuant to Article 9 of the Uniform Commercial Code. *Vanek,* 540 N.E.2d at 84; *Cole,* 713 N.E.2d at 905 n. 3. The court concludes that they are not property that can be subject to an employee's lien, created pursuant to I.C. 32–8–24–1, *et seq.,* either.[5] Consequently, Plaintiff has no lien upon the liquor license held in the debtors' names.

 The Carrolls claim an equitable lien upon the license, arguing that they believed they were being given a lien upon it through Barnes & Hooker Inc.'s security agreement and because the proceeds of the money they loaned to the debtors increased its value. This claim founders, initially, because equitable liens "have long been the object of scorn in bankruptcy" and are "contrary to the policy of bankruptcy law." *Small v. Beverly Bank,* 936 F.2d 945, 949 (7th Cir.1991). More importantly, since the Carrolls could not, as a matter of Indiana law, obtain a valid security interest in the license, the court sees no reason why they should be allowed to accomplish indirectly, through an equitable lien, what they could not have accomplished directly. Equity should not be called upon to do something the law prevents.

### Conclusion

Under Indiana law, an alcoholic beverage permit is not property to which a lien

may attach. Accordingly, neither Plaintiff, the Carrolls, nor Barbaro has a lien upon the Permit. The Permit is property of the respective bankruptcy estates and is held free and clear of any of the parties' claimed liens. Judgment will be entered accordingly.

---

**5.** The court does not accept the suggestion that even if Plaintiff's employee's lien cannot attach to the license it may, nonetheless, attach to the proceeds the trustees received when the license was sold. Section 552 of the Bankruptcy Code addresses the postpetition effect of a security interest and it contemplates that property acquired by the estate after the date of the petition is not subject to liens arising out of agreements entered into prior to the case. 11 U.S.C. § 552(a). While there is an exception to this general rule, which will allow a lien to attach to the proceeds of property, for that to occur the lien must extend to both the "property of the debtor acquired before the commencement of the case and to the proceeds ... of such property." 11 U.S.C. § 552(b)(1). Consequently, unless it first has a lien upon the property sold, a creditor will not obtain a lien upon the sale proceeds.